## UNITED STATES v. RICE.
### No. 9832.

United States Court of Appeals
Third Circuit.

Argued June 14, 1949.

Decided Aug. 8, 1949.

Herbert S. Levin, Philadelphia, Pa. (Sydney Finkelstein, Philadelphia, Pa., on the brief), for appellant.

Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., on the brief), for respondent.

Before BIGGS, Chief Judge, and McLAUGHLIN and O'CONNELL, Circuit Judges.

BIGGS, Chief Judge.

The appeal at bar is from an order of the court below filed October 27, 1948 in accordance with its opinion filed July 22, 1948,[1] denying a petition filed by the United States Attorney to return to the appellant, Rice,[2] the sum of $1,020 of $1,950 held in the registry of the court below. The petition requests that the balance, viz., $930, be paid to the treasurer of the United States. The parties saw fit to present to the court below and to bring to this court

---

[1] No opinion for publication.

[2] A petition somewhat similar to that of the United States Attorney was filed by Rice. The court below acted on the petition of the United States Attorney.

a record deficient in many respects but we believe that enough appears therefrom, as supplemented by stipulation filed by the direction of this court, to permit disposition of the issues presented. The pertinent facts follow.

On November 26, 1946 an information was filed by the United States Attorney against Rice charging him with violations of the Emergency Price Control Act of 1942, as amended, and of the Price Control Extension Act of 1946, 50 U.S.C.A.Appendix, War, § 901 et seq., in that Rice sold and delivered to Barsin kegs of "cement finish" nails in excess of the maximum price permitted by Revised Price Schedule 49, Section 1306.159(h), as amended, 11 F. R. 8085. Put to his trial Rice was found guilty but, on a motion filed by him for judgment of acquittal, the court below directed such a judgment to be entered upon the ground, as was indeed the case, that the United States had failed to prove the corpus delicti.

On March 5, 1947 there was delivered by Moldawer, Associate Regional Enforcement Executive of the Office of Temporary Price Controls, to the clerk of the United States District Court for the Eastern District of Pennsylvania, an envelope, containing inter alia $1,950 in cash, for safekeeping with the provision that it was not to be opened by the clerk nor its contents verified so that proof of Rice's offense might be facilitated when the money was offered in evidence at his trial. The foregoing appears from a memorandum dated May 7, 1947 [3] from Moldawer to Shapira, Chief of the Review and disposition Section of the Office of Temporary Price Controls. The memorandum contains the following statement, "Upon disposition of the case wherever said monies [4] were held as evidence, the monies were to be disposed of as directed by the Court."

Rice's criminal trial commenced on March 12, 1947, and was concluded the same day, Rice being found guilty. It appeared from the evidence that on or about October 23, 1946, Barsin, an employee of the Office of Price Administration, bought the kegs of nails from Rice, paying him in cash $1,950.[5] Rice was then arrested; the money, consisting of $1,950 in bills as we have stated, was taken from Rice's person and the information on which he was subsequently tried was filed against him. The $1,950 given to Rice in payment for the nails had been advanced by Johnson of the Philadelphia Home Builders Association. It appears that the nails were turned over to Johnson who subsequently made use of a large part of them in veterans' housing projects. The alleged ceiling price of the nails was $1,020. Rice after his arrest made a statement in which he said that the nails belonged to one Parmentier and that he was selling them for him on commission and, in effect, he reiterated this position at his trial.

On May 2, 1947, according to the stipulation filed by the parties, the Philadelphia Office of the Price Administration was closed. On May 8, 1947, the following order was filed in the case: "Order Directing Clerk to Take Custody of Certain Evidence. It appearing that the Office of Price Administration has in its possession certain monies which are to be offered in evidence in the trial of the above-entitled case, and it further appearing that the said Office of Price Administration desires to turn the said monies over to the Clerk of this Court to be kept by him and produced at the trial of the case, the Clerk of the Court having been authorized by the

---

[3] A copy of this memorandum has been furnished us by the United States Attorney for the Eastern District of Pennsylvania. We think that this document has sufficient official status to enable both this court and the court below to take judicial notice of it. Its contents seem not to be disputed.

[4] Three other sums were delivered in envelopes to the clerk of the United States District Court for the Eastern District of Pennsylvania at the same time. Hence the reference to "monies" which were held as evidence.

[5] This was not the full purchase price which was $2080. Barsin undertook to pay the difference at a later date and Rice stated that he would give his personal check to the actual vendor, he to be reimbursed by Barsin.

Administrator to rent a safety deposit box for the safekeeping of the said evidence, it is ordered that the Clerk of this Court be and he is hereby authorized and directed to take into his custody the sum of One Thousand Nine Hundred Fifty and no/100 ($1,950.) Dollars and hold the same pending the further order of the Court." On July 25, 1947 the court below granted a judgment of acquittal for reasons already stated.

It appears from the stipulation to which we have referred that the clerk of the court below kept the money, the actual bills or cash which Barsin had paid to Rice, in a safe deposit box until it seemed that the money was no longer needed as evidence.[6] The petition of the United States Attorney was filed on January 27, 1948 and on October 27, 1948, the petition was denied on the ground that Rice's statements showed that he was not entitled to the money since he was not the owner of the nails.

On February 28, 1949 [7] the United States Attorney filed a petition to the court below requesting that the $1,950 be turned over by the clerk of the court below "to the registry" of the court "pending any further claims as to ownership". The court below entered an order on this petition as follows: "And now, to wit: this 28th day of February, A.D., 1948 [sic], it is in consideration of the within going petition, ordered and decreed that the sum of Nineteen Hundred and Fifty Dollars ($1,-950.00), held by the Clerk of the United States District Court as custodian, be turned over to the registry of the United States District Court."

The order appealed from is that which was filed on October 27, 1948 denying the petition of the United States Attorney to return $1,020 to Rice and to pay the balance, $930, to the treasurer of the United States.

In our opinion the court below was without the jurisdiction or power to make this order or to adjudicate any controversy as to who is or who is not entitled to the $1,-950. We reach this conclusion because the court below was without jurisdiction or power to enter the order of February 28, 1949, directing the clerk to deposit the money in the registry of the court. It will be observed that by the earlier order of May 8, 1947 the clerk of the court below was directed merely to take custody of certain evidence, viz., the $1,950 in cash, and that the Administrator had authorized the clerk to rent a "safety deposit box for the safekeeping of the said evidence * * *." It would appear from the memorandum referred to in note 2, supra, that this arrangement was made with the cooperation and assistance of the United States Attorney who of course was charged with the prosecution of the case against Rice.

We do not criticize the arrangement made by the order of May 8, 1947, for it is not unusual and indeed is entirely proper for a clerk of a United States district court to take custody of physical objects or materials which thereafter may be put into evidence as was the $1,950 in cash in the instant case. But we know of no theory, and none has been suggested to us, whereby the registry of a United States district court may be made a depository for money used in evidence. As soon as the court below had made its order of February 28, 1949, the clerk deposited the $1,950 in his clerk's account and the $1,950 ceased to exist as cash and became a banking credit in favor of the clerk of the court. A United States district court is a court of limited jurisdiction and possesses only those powers which are conferred on it by statute under Article III of the Constitution. Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Mayor v. Cooper, 6 Wall. 247, 18 L.Ed. 851. It cannot assume jurisdiction, Venner v. Great Northern R. Co., 209 U.S.

---

[6] In the petition of the United States Attorney, filed January 27, 1948, the United States Attorney refers to the $1,950 as "being of no further value as evidence." Rice was not tried a second time.

[7] The order is dated February 28, 1948. It was filed on February 28, 1949 and we will assume it was made on the latter day.

24, 28 S.Ct. 328, 52 L.Ed. 666, and it may not render advisory opinions. United Public Workers v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754.

■ There is now pending no justiciable controversy respecting the $1,950 in the court below. Neither the Price Administrator nor the United States Attorney was entitled to deposit money used or to be used as evidence in the registry of the court. No appropriate suit was there pending which could authorize such a course. Indeed, insofar as we can see, no suit can be maintained in the court below to determine title to the $1,950.[8] While the functions of the Administrator in respect to maintaining and prosecuting suits based on infractions of price regulations were transferred to the Attorney General to some degree by Executive Order 9842,[9] this will not aid the United States Attorney's position for the Administrator had no right to cause the $1,950 to be deposited in the registry of the court below.

■ It follows, we think, that the order of the court below must be vacated with the direction to dismiss the petitions for the return of the $1,950 since the court below was without jurisdiction. Since the court below was without power to enter its order of February 28, 1949 directing its clerk to turn the $1,950 in cash over to the registry of the court that order must be vacated as a nullity. Since there was no jursidiction to enter that order it may be set aside at any time and we will effect that result sua sponte. The clerk of the court below may then return $1,950 to the United States Attorney who may make such disposition of it as he may see fit subject to the direction of the Attorney General and without the interposition of the court below. The court below may make such orders as are necessary to effect the foregoing.

An order will be entered in accordance with this opinion.

---

8 Cf. such statutes as are embodied in Sections 1356 and 2465 of Title 28, U.S.C.A.

9 By Executive Order No. 9842, 50 U.S.C.A.Appendix, § 925 note, 12 F.R. 2646, effective June 1, 1947, the Attorney General was "authorized and directed * * * to coordinate, conduct, initiate, maintain or defend: * * * (b) Litigation against violators of regulations, schedules or orders relating to maximum prices pertaining to any commodity which has been removed from price control; * * *." The order went on to state: "Nothing herein shall be deemed to restrict or limit the powers conferred upon the Attorney General by law with respect to the conduct, settlement, disposition or review of litigation." Thus the Attorney General took over the remaining functions of the O. P. A. in respect to litigation.