James **PHILLIPS,** Appellant
(Defendant below),

v.

**STATE of Wyoming,** Appellee
(Plaintiff below).

No. 4566.

Supreme Court of Wyoming.

Sept. 3, 1976.

Hugh B. McFadden, Jr., Corthell, King, McFadden, Nicholas & Prehoda, Laramie, for appellant.

H. J. Arnieri, Special Asst. Atty. Gen. Cheyenne, and George Zimmers, Albany County Atty., Laramie, for appellee.

Before McCLINTOCK, RAPER, ROSE and THOMAS, JJ., and ARMSTRONG, District Judge, Retired.

ARMSTRONG, District Judge, Retired.

Defendant was convicted of forgery under § 6–17, W.S.1957, in Albany County, Wyoming. He seeks reversal on appeal alleging the following errors:

1. The accomplices' testimony was not corroborated.

2. Insufficient evidence to connect defendant with the commission of the crime.

3. Lack of evidence of intent to commit the crime.

4. Failure of the State to prove the crime was committed in Albany County, Wyoming.

5. Money in possession of defendant when arrested, and retained by police, should be returned to him.

This court finds no merit in the first four assignments of error, but reverses the District Court with respect to the fifth.

Sufficient facts of this case may be shown by a brief abstract of some of the testimony introduced at trial.

Appellant Phillips began the series of events leading to commission of the crime of forgery, by stating he was go¹ ˌrom Colorado to Wyoming to get s ˌ money. Phillips was accompanied by Jesse Holeman and Mary Domecillo. The trip was made in Holeman's car. Upon leaving, Phillips made a special point of carrying a check protector with him, stopping in Denver to obtain a paper bag which one of the accomplices observed was the same bag in which he saw the check protector.

When Phillips and his two associates arrived in Casper each of them purchased a part of a total of thirty one-dollar money orders from Buttrey's Food Store. The manager of the store testified to the sale of thirty one-dollar money orders on the date in question. An employee of the store identified appellant as the first of the three people to make the purchase.

They drove from Casper to Laramie and checked into a motel. Appellant took possession of the thirty money orders that night. Holeman testified he saw the money orders the next morning and noticed that different amounts had been impressed on them by a check protector, the original amount on the order having been bleached off by using Purex and alcohol. He also saw the appellant return the check protector to Holeman's car.

Domecillo testified that under Phillips' direction one of the money orders in the amount of $85.00 was filled out by Holeman and passed by her at the Ideal Discount Store of Laramie. That money order, and twenty-five others seized incident to the arrest of the three, were identified as being those sold in Casper. An employer of the discount store identified Domecillo as the person who passed the altered $85.00 instrument. Domecillo further swore that the $85.00 she received when she cashed the forged instrument was turned over to Phillips.

Further corroboration came from Dr. James Booker of the State Crime Laboratory. He testified that the money orders had been altered, the new dollar amounts having been impressed by a check protector making an impression identical to that made by the protector seized from Holeman's car. He further testified that stains found on Phillips' trousers were made by the active ingredients of Purex, which lent credence to Holeman's testimony that it

was one of the agents used by appellant to bleach the original one-dollar amount from the money order.

■ 1.   Considering the five alleged errors, from that brief recitation of facts it is clear the testimony of the accomplices was sufficiently corroborated to allow the jury to give full credit to their statements, even though such corroboration may not have been needed.

■ There is no statute in our state requiring the testimony of an accomplice to be corroborated. The case law states that a conviction may be had upon the uncorroborated testimony of an accomplice. *Filbert v. State,* Wyo., 436 P.2d 959, (1968); *Pike v. State,* Wyo., 495 P.2d 1188, (1972); *Loddy v. State,* Wyo., 502 P.2d 194, (1972). The admonition given in *Pike* "that such testimony must be most carefully scrutinized and that a jury in a case tried before it must have advice to that end," was more than adequate in the instruction given to the jury in this case. The instruction given in the case at bar, in fact, charged the jury to receive such testimony "with great caution, and you ought not to convict the Defendant of the crime charged upon the testimony of an accomplice alone, unless it ,is corroborated by other credible evidence," tending to show guilt.

Clearly appellant cannot find any prejudice in the trial court's super-precautionary instruction.

■ 2.   In addition to the testimony of the accomplices, there is ample direct and circumstantial evidence for the jury to have connected appellant to the commission of the felony charged. *Harris v. State,* Wyo. 487 P.2d 800 (1971); *Wharton's Criminal Evidence,* 13th edition, § 649.

■ 3.   Without again detailing the testimony, the record shows, more than adequately, facts from which the jury could infer beyond a reasonable doubt that appellant had the requisite intent to defraud. *State v. Grider,* 74 Wyo. 88, 108, 284 P.2d

400, 407 (1955); *State v. Jackson,* 75 Wyo. 13, 291 P.2d 798, 803 (1953); *Jaramillo v. State,* Wyo., 517 P.2d 490, 492 (1974).

■ 4.   The evidence showed that the alteration and utterance of the forged money orders were accomplished in Laramie, Albany County, Wyoming. The contention that the crime was not proven to have been committed in Albany County, Wyoming, is completely without merit.

5.   At the time of his arrest, appellant had in his possession approximately $400.00. This was seized and retained by the police but never introduced into evidence. Before trial the court granted a motion to release enough of the money to purchase suitable clothing for appellant's appearance in court; $348.00 remained. At the sentencing hearing, appellant moved that the remaining money be transmitted to the penitentiary for his use. That motion was denied on the ground that the court was informed by the county and prosecuting attorney that the money, in his opinion, was the proceeds of appellant's unlawful activities and that he had notified the victims. The court thereupon ruled three ways:

(a)   That it would hold the money until an action was brought to determine whether it belonged to other persons as a result of crime.

(b)   That if it was not so determined, the court would hold the money subject to the right of the State to contend that it should be used for payment of fees incurred for his defense.

(c)   "The court believes and will hold at this time that if Mr. Phillips has any money that money should be used for his defense."

No claim, civil or criminal, has been filed by any victim or other person as contemplated by the trial court's first alternative suggestion and mandate. This court, therefore, is not called upon in (a) to determine whether the trial court exceeded its authority or deprived appellant of due process by "holding" the money until an action is brought.

Under our statutes providing an attorney for a "needy person" (i.e., "a person who at the time his need is determined is unable to provide for the full payment of an attorney and all other necessary expenses of representation" § 7–9.1(c), W.S.1957, 1975 Cum.Supp.) two sections seem germane to the trial court's second order labeled (b) above.

The first section is 7–9.4. Subdivision (a) thereof reads:

"The determination of whether a person covered by section 7–9.2 of the statutes is a needy person shall be deferred until his first appearance in court or in a suit for payment or reimbursement under section 7–9.8 of the statutes, whichever occurs earlier. Thereafter, the court concerned shall determine, with respect to each proceeding, whether he is a needy person."

Subdivision(b) sets out factors to be considered in determining "needy person".

Subdivision (c) reads:

"To the extent that a person covered by section 7–9.2 of the statutes is able to provide for an attorney, the other necessary services and facilities of representation, and court costs, the court may order him to provide for their payment."

Query: At what time in the proceeding may the court "order him to provide for this payment" as provided in (c) above?

■ The answer is furnished in subdivision (a) of 7–9.4 quoted above and is either at the time of his first appearance in court or when suit establishes the reimbursable amount, and in § 7–9.2-(b), W.S. 1957, 1975 Cum.Supp, which reads: "The attorney, services and facilities, and court costs shall be provided at public expense to the extent that the person, at the time the court determines need, is unable to provide for their payment." Section 7–9.4(c) authorizes a court order to compel payment by the defendant of such amount as he is able to provide *after determination of need*, as provided in §§ 7–9.2(b) and 7–9.-4(a).

The second pertinent section with respect to the trial court's second order (b) is 7–9.8(a) which provides a remedy for the county to recover payment or reimbursement from one who has received legal assistance under the Act when: (1) he was not entitled thereto; (2) he was not a needy person when he received the aid; or (3) he failed to make the certificate of "material factors relating to his ability to pay as the court prescribes" as required by § 7–9.4(b).

No action under § 7–9.8 has been filed by the county.

Query: Did the court have authority to hold the money for the payment of attorney's fees and defense under paragraph (c) of its order when the order was made at the sentencing hearing?

It seems clear that the court could have ordered it paid when defense services were first provided at appellant's initial appearance in court, or after a lawsuit had determined the rightful owner, or after a § 7–9.8 action determined that the county was entitled to reimbursement. In all three of those postures the appellant would have been accorded proper due process with its attendant opportunity to prove ownership or a legitimate defense.

■ By the same token the court exceeded its authority in ordering the money held at the sentencing hearing without any due process afforded the appellant.

"Defendant was entitled to hearing to determine whether there was any reason for withholding of personal items which defendant surrendered to the sheriff at time he was taken into custody and to determine whether defendant was owner of $213 in cash which was on his person at the time of his arrest." *People v. Aikens*, 264 N.E.2d 850 (Ill.1970).

"In any case, jurisdiction to order restitution in criminal cases is statutory, and in the absence of statute it has been held that the court has no power to issue such an order. * * *" 24B C.J.S. Criminal Law § 2004, p. 705.

An important factor which was overlooked by the trial court here was that the money was not used as evidence and never left the custody of the arresting police officers.

"A criminal court has no jurisdiction to order the return of property found in the possession of accused at the time of his arrest which is not in the custody of the court or otherwise within its orbit." 24B C.J.S. Criminal Law § 2006, p. 713.

In *Padilla v. United States,* 267 F.2d 351, 352, (9th Cir. 1959), rehearing denied, cert. den. 361 U.S. 834, 80 S.Ct. 85, 4 L.Ed. 2d 75, rehearing den. 361 U.S. 898, 80 S.Ct. 195, 4 L.Ed.2d 154, the court said:

"Also Padilla asserts error in the case because this court refused his motion to require the return of some $2,350.00 of his money found in his car and on his person at the time of his arrest. This may or may not have been part and parcel of his narcotics transactions.

"Had the money come to the case as evidence, no order for disposition of the money should be made until the conviction is finally affirmed or the charges dismissed. But in the facts before us one finds that the arresting officers turned the money over to the United States collector of customs at San Diego. The money itself never came into the trial court's orbit. The collector of customs did not testify in the case. Had the trial court entered an order in this case directing the collector to return the money, it would have been highly improper. The res—the money—was not in court nor was the collector there as a party to the criminal trial. Padilla lost no rights to the return of the money by the mere denial herein of his motion to return the money."

See also *United States v. Rice,* 176 F.2d 373, 375–376, (3rd Cir. 1949).

In *State of North Carolina v. Earley,* 24 N.C.App. 387, 210 S.E.2d 541, 542 (1975), where the stolen property had been introduced into evidence, the court said:

"At the outset we are confronted with the question of Judge Martin's jurisdiction in a criminal case to adjudicate conflicting claims of title to allegedly stolen property which has been used in evidence and in which case the prosecution has been completed. We have no statute upon the subject, and we find no case law in this state which covers the subject.

"Our research leads us to believe that sound reasoning dictates that under the facts presented, Judge Martin did not have such jurisdiction in a criminal case.

"When the person from whose possession the allegedly stolen property was seized as evidence was not convicted of (or was not charged with) obtaining the property in violation of the law, and there is a controversy between him and the person from whom the property was allegedly stolen as to which has the right to it, a question is presented which cannot be determined in a criminal action but must be determined in an independent civil action. After the final disposition of the criminal case, a civil action among the various claimants to the property is the proper action in which title or right to possession can be adjudicated. [Citing cases]"

We hold that the trial court at the sentencing hearing deprived the appellant of due process and exceeded its jurisdiction by holding that the money would be retained to pay defense services.

The judgment and sentence is affirmed; the order to hold the money for use for defense is reversed.