**STATE HIGHWAY COMMISSION of Wyoming, Appellant (Plaintiff below),**

v.

**Russell I. LAIRD and Florence Sien Laird, Appellees (Defendants below).**

**No. 3555.**

Supreme Court of Wyoming.

April 12, 1967.

Glenn A. Williams, Chief Special Asst. Atty. Gen., John F. Raper, Atty. Gen., J. Richard Plumb, Special Asst. Atty. Gen., Cheyenne, for appellant.

Elmer J. Scott, of Scott & Joffe, Worland, for appellees.

Before GRAY, McINTYRE, and PARKER, JJ

Mr. Justice McINTYRE delivered the opinion of the court.

This is an eminent domain case. By order of the trial court, the State Highway Commission was granted possession of land belonging to Russell I. Laird and Florence Sien Laird, for the purpose of widening and improving a highway running in front of their property. Following the commissioners' award, a stipulation was entered into as to the compensation for land actually taken, but upon the demand of the commission there was a jury trial on the matter of damage to the remainder. Defendants were awarded $2,750. The commission has appealed from the award and the resulting judgment on the ground that the trial court as a matter of law erred in overruling the commission's motion to strike all testimony relating to loss of crops.

At the trial the landowners presented evidence that as to a 31-acre field "the traffic from the highway, construction, telephone, the whole bit" denied to them the full access necessary to plant the field until a month past the usual planting time. Evidence was also adduced to the effect that when construction of the highway began some of the irrigation drainage course used by defendants was torn out. Only a cement supply ditch was immediately installed; and due to the fact that the resident engineer did not realize this ditch was needed for anything except to supply water, it was at a grade too high to carry away the landowners' waste water.

The highway department assumed the responsibility for putting in the waste ditch, but a new waste ditch was not staked by the engineer so the contractor could go on with construction in time to handle waste water from irrigation of the crop of sugar beets. The new ditch caused an extra acre of ground to be lost to the landowners for cultivation purposes.

Although the resident engineer testified the landowners could have put the water on their crop and the contractor would have taken care of the waste water in the best possible way, there was testimony to the effect that this would have resulted in erosion, starting at the creek where the water emptied and causing a gully, probably 10 to 14 feet deep, back to the borrow pit, dropping the whole highway and roadbed and washing it all into the creek.

The landowners testified the inability to plant their crop seasonably and immediately irrigate it caused the subsequent abandonment of eight acres and the replanting of oats, which did not mature and had to be plowed under. Also, the beet production on the other 23 acres was only three tons per acre; while adjacent acreage, planted and irrigated without delay, produced 16 tons per acre. Thus, the landowners claimed a loss of 380 tons of sugar beets, which would have sold for $14 per ton, or $5,320.

During the trial, the commission entered objections to questions concerning the beet crop, first on the ground that "it hasn't been connected up, that the Highway Department caused the loss," and second, that a proper foundation had not been laid to show that "it" was a condemnation factor. These objections were overruled. Later, out of the hearing of the jury, counsel for the commission moved to strike all the testimony pertaining to any allegations of damage to the beet crop, but the argument concerned only the matter of irrigation. The trial court declined to strike this testimony.

The commission here argues that the trial court as a matter of law erred when it overruled the motion to strike all testimony pertaining to the landowners' loss of sugar beet production. It maintains that, viewing the evidence in the best possible light, the delay in staking the waste ditch and in constructing it would either have been a result of the negligence of the resident engineer in staking the ditch or a result of the negligence of the contractor in constructing it.[1]

█ Relying on our decision in Chavez v. City of Laramie, Wyo., 389 P.2d 23, 24, attorneys for the state say a damaging of property not actually taken cannot be said to be for a "public use" if the damaging results from accident, negligence or a tort. They insist the situation is the same in the case at hand as it was in the *Chavez* case, and that the loss of a part of defendants' beet crop served no public use.

In the *Chavez* case, an inverse eminent domain action was brought by the owners. They alleged their damage was caused in the construction of a new viaduct by the negligent crushing of a sewer line and the negligent severing of a water main. Thus, it was apparent on the face of the complaint that the claim for damages was based on a tort, and their suit was dismissed. It does not necessarily follow that the damage to Lairds' crop resulted from a tort.

The record before us indicates the trial judge recognized damage is not compensable when it results from a tort. He justified his rulings in this case, after both sides had rested, by stating: "Now there was no tort involved here so far as I could see. It was just in the process of this taking they delayed this man's watering and irrigation."

We think a good statement of the difference between what is compensable and what is noncompensable in this type of case is found in Ruth v. Department of Highways, 153 Colo. 226, 385 P.2d 410, 411. There the supreme court of Colorado said it is perfectly clear an award in an eminent domain proceeding is inclusive of all damages that are the "natural, necessary or reasonable incident" of the improvement. On the other hand, the Colorado court pointed out the award does not include such damages as may arise from negligent or unskilled construction or use of the improvement.

█ Before it can be said whether the damage to Lairds' beet crop was compensable or not, it must first be determined whether the late planting and the delay in restoring the drainage ditches of the Laird irrigation system were necessary, natural and reasonable incidents of the construction of the improvement; or whether the delay and consequently Lairds' damage arose from negligent and unskilled construction procedures such as would amount to a tort.

It is possible the commission's resident engineer was necessarily and reasonably, without negligence on his part, delayed in staking the waste ditches for the contractor; also it is possible the contractor, without negligence on his part, was in turn delayed in installing the ditches because of the necessary and reasonable time consumed by the resident engineer. On the other hand, it is possible that either the engineer or the contractor was careless and guilty of negligence and a tort.

It seems clear to us the judge believed the delay in restoring the drainage ditches was a necessary and reasonable incident to completion of the improvement. Consequently, he decided and held no tort was involved. As to whether late restoration of the drainage system caused late planting, we have already indicated the evidence per-

---

1. The contract between the commission and the contractor provides in part as follows: "Where the project involves work over, through or around irrigated lands or irrigation facilities, the contractor shall make all arrangements with the owner(s) for the sequence of such work. Work involving changes in, or interference with, irrigation facilities shall be done at such times or in such manner that it will not interfere with the proper handling of water required for irrigation purposes."

taining thereto was in conflict. Thus, the apparent conclusion of the trial court that it did will not be disturbed.

As to whether this decision belonged to the judge or the jury, we notice it is held in many jurisdictions that the only question for the jury in condemnation proceedings is that of value or compensation, and all other questions, even though they are questions of fact or of mixed law and fact, are to be tried by the court without reference to a jury. 30 C.J.S. Eminent Domain § 289, pp. 66–67. See also People ex rel. Department of Public Works v. Russell, 48 Cal.2d 189, 309 P.2d 10, 14; Pembina County v. Nord, 78 N.D. 473, 49 N.W.2d 665, 667; and Port of Umatilla v. Richmond, 212 Or. 596, 321 P.2d 338, 345.

In our jurisdiction, Rule 71.1(j), W.R. C.P., provides either party in condemnation cases shall be entitled to a trial by jury in the district court "of the issue of just compensation." In keeping with this the jury in this case was instructed that the sole issue to be determined by it was the amount of just compensation to be paid to defendants for damages, if any, to the remaining portions of defendants' land. The commission made no objection to the instruction, and it has made no claim that a jury could or should have decided whether the crop damage resulted from carelessness or as a natural and reasonable incident to construction.

Attorneys for the state should not have been fooled by the nature of the claims made by owners in this action. Adequate procedures for discovery, pretrial conferences, and other methods of delineating issues and positions are available under our rules of civil procedure to prevent surprise in condemnation cases as well as other actions.

True it is the landowners in eminent domain cases have the burden of proving their damages. However, when a prima facie case has been made indicating a damage resulting as a natural and necessary incident of the improvement, if the condemnor claims the damage resulted from negligence and a tort, it has the responsibility of going forward with proof sufficient to overcome the prima facie case of the owners. This the commission failed to do in this instance.

With respect to the amount of compensation allowed by the jury for Lairds' damage to the remaining portions of their land, counsel for the commission state they do not question the amount of the award, if crop damage is allowed as a compensable item.

Of course, we do not pretend to say crop damage is usually a compensable item. We say only, in view of the finding of the trial judge in this particular case, it was proper for such damage to be included as a part of defendants' damage to the remaining portions of their land.

Affirmed.

HARNSBERGER, C. J., not participating.