ENERGY TRANSPORTATION SYS-
TEMS, INC., a Delaware corpora-
tion, Appellant (Plaintiff),

v.

Robert R. MACKEY, Dorothy Y. Mackey,
Wyoming Production Credit Associa-
tion, Appellees (Defendants),

Western Minerals Corporation, an Indiana
corporation, Farmers Home Administra-
tion of the United States Department of
Agriculture (Defendants).

No. 5681.

Supreme Court of Wyoming.

Sept. 3, 1982.

Henry A. Burgess and Kim D. Cannon (argued), of Burgess & Davis, Sheridan, for appellant.

George J. Argeris of Guy, Williams, White & Argeris, Cheyenne, and John D. Raikos (argued), of Raikos & Raikos, Indianapolis, Ind., for appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

A condemnation jury verdict upon which a judgment was entered is the subject of this appeal. The condemnor presents as issues:

1. "Is the Judgment awarding condemnation damages supported by competent evidence where it is not based upon any evidence of the 'before and after' values of the ranch unit?"

2. "Is the Judgment awarding condemnation damages supported by any competent evidence where it is not within the range of values testified to by all appraisers?"

3. "Did the Court commit reversible error in failing to give any instruction on the burden of proof and the preponderance of the evidence?"

4. "Did the Court commit reversible error in failing to instruct the jury that it cannot award damages merely because the project causes personal inconvenience, annoyance and discomfort unless such matters cause a depreciation in the value of the land?"

We will reverse and remand for a new trial on the issue of just compensation.

## I

During the course of acquiring a way of necessity for transporting coal slurry and water through two pipelines, buried about eight feet deep with a three foot overburden, Energy Transportation Systems, Inc. (ETSI), appellant, being unable to negotiate a purchase, initiated proceedings to con-

**1154** ■■■■■■■■■■■■■■■■

demn an underground pipeline easement across ranchlands of Robert R. and Dorothy Y. Mackey, appellees (Mackeys). The easement was for a right of way 4,398 feet long by 100 feet wide, occupying 10.1 acres.[1] Possession was granted. Court-appointed appraisers returned a valuation of $7,120. The Mackeys demanded trial by jury pursuant to Rule 71.1(j), W.R.C.P., infra fn. 2. Trial was had accordingly. Other narrative will be set out as required in consideration of the issues.

## II

As to the first issue the jury was instructed:

> "The measure of just compensation to be paid to the Mackeys is the difference between the fair market value of the Mackeys' land immediately before the imposition of the easement and the fair market value of the Mackeys' land immediately thereafter."

The jury returned a special verdict on the typed form provided by the court; the jury filled in the money amounts shown:

> "1. We, the jury, find the fair market value of the Robert R. and Dorothy Y. Mackey property before August 13, 1981 is . . . . . . . .
> $50,500.00

> "2. We, the jury, find the fair market value of the Robert R. and Dorothy Y. Mackey property after August 13, 1981 is . . . . . . . . . . .
> $   505.00

> "3. We, the jury, find the just compensation to be paid to Robert R. and Dorothy Y. Mackey is . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> $49,995.00"

Before the jury was discharged counsel for ETSI moved that it be "set aside as contrary to the evidence, not in conformity with the instructions, and bears no relationship to any of the issues in this case." The motion was denied and the jury excused. ETSI thereafter also timely moved to set aside the verdict and for a new trial on the ground that the verdict was not sustained by sufficient evidence and contrary to law in that the jury ignored the instructions. Rule 59(a)(6), W.R.C.P.

■■■■ The Mackey ranch consisted of approximately 3,840 acres of deeded land, 640 acres under state lease, and 6,400 acres of federally-leased land. This court has repeatedly held that where there is a partial taking of property, as here, which will result in damages to the remainder not taken, the amount of just compensation to be awarded for that taken or affected is determined by application of the before and after rule, i.e., the difference between the fair market value of the entire parcel before the taking and that after the taking. *Coronado Oil Company v. Grieves,* Wyo., 642 P.2d 423 (1982); *State Highway Commission v. Scrivner,* Wyo., 641 P.2d 735 (1982); *Continental Pipe Line Company v. Irwin Livestock Company,* Wyo., 625 P.2d 214 (1981); *Wyoming State Highway Department v. Napolitano,* Wyo., 578 P.2d 1342, 1346 (1978); *Colorado Interstate Gas Company v. Uinta Development Company,* Wyo., 364 P.2d 655, 658 (1961); *Gillespie v. Board of Com'rs of Albany County,* 47 Wyo. 1, 30 P.2d 797, 803 (1934); *City of Rawlins v. Jungquist,* 16 Wyo. 403, 94 P. 464, 468, reh. den. 16 Wyo. 403, 96 P. 144 (1908). Within each of those cases will be found supporting authority. In the case of taking an easement, then, the measure of just compensation is the difference in value of the whole tract prior to imposition of the easement and the value of the tract after imposition of the easement. *Coronado Oil Company* and *Continental Pipe Line Company,* supra.

Mr. Mackey, one of the owners, was asked by his counsel whether he had an opinion "[o]f the value of the land affected by the pipeline." His answer was, "Well, $200,000.00." He gave no testimony as to the value of the ranch before the taking or after the taking. Mrs. Mackey, the other owner, stated she did not know the value of "the property taken out" by the acre nor

1. Wyoming Production Credit Association, defendant and appellee, as a mortgagee of the lands, only claims the proceeds. The action was dismissed as to Western Minerals Corporation and Farmers Home Administration, the United States as to the latter having filed a disclaimer.

did she demonstrate any noticeable knowledge of land values. The question and answer which followed was:

"Q. You don't know that? All right. Do you have an opinion as to the loss which would be incurred by the pipeline in the idea of the valuation of your ranch before and after the pipeline is in?

"A. Well, $200,000.00."

She did not demonstrate any knowledge of land values and gave no testimony as to the value of the ranch before and after the taking.

A neighbor was called by the owners as a witness:

"Q. * * * Do you consider the values of land and property around you as a rancher?

"A. Excuse me. I don't know how to answer that, really. I'm not interested in what other people do.

"Q. All right. In the management, though, of your own property—when I say that—do you, at least, consider the land market and values of property around you?

"A. No. I have a price, what I want for mine, and that's what I'll consider.

"\*      \*      \*      \*      \*      \*

"Q. Okay. Well, how do you value your own ranch, then, sir, per acre?

"A. I would be ashamed to say.

"MR. SAMPSON: Your Honor, this is incompetent, irrelevant, and immaterial to the value of the Mackey property, which is in question.

"THE COURT: Well, the witness may testify as to his opinion of the value of his ranch.

"A. (By Mr. Keeline) I don't feel I'll ever get it, but I have a price for the real estate agent right now at a $1,000.00 an acre."

That witness gave no before and after testimony relating either to his land or that of the Mackeys. An asking price (offer to sell) of comparable property is not evidence of

value, in any event. 5 Nichols on Eminent Domain § 21.4[3] (3rd ed. 1981).

The owners' expert testified that the value of the Mackey ranch as a "pure grazing entity for just livestock" was $860,000. It was not clear whether that was before or after the taking—in any event it was the only total value he testified to. He valued an acre for grazing at $180. He valued an acre "with subdivision potential"[2] at $1,200. He had no opinion as to the before and after value of the ranch because of imposition of the easement.

That's all there was to the owners' case.

The evidence produced by ETSI explained the laying of the pipeline. The explanation was that upon backfilling the ditch, the area occupied by the easement would be reseeded and restored to its full grazing capability with no fences to interfere with free movement of livestock. ETSI's expert appraisal testimony was by two qualified and experienced professional appraisers, both having used the market-data approach through use of comparable sales. Each reached a before-the-taking value of the entire ranch unit and its value after imposition of the easement. Each made an independent appraisal. One appraiser's valuation before was $642,480 with an after valuation of $641,693; he fixed the fair market value—just compensation—at the difference which was rounded to $800. The other appraiser's opinion was that the fair market value of the ranch before the taking was $580,000 and found no difference in the value after the taking. It was his opinion, gathered from his market investigation, that the presence of a pipeline easement with the surface restored does not affect land value for grazing. He allowed the value of lost grazing use caused by construction and reseeding at $90 per acre, based on animal units, with just compensation rounded to $900 because of the easement across the 10.1 acres.

**2.** The highest and best use of the land was in dispute. Remote or speculative uses may not be considered in determining fair market value

of property condemned. *Wilson v. United States,* 350 F.2d 901 (10th Cir. 1965).

**1156**

■ From this summary, it can be seen that none of the Mackeys' evidence was competent. While an owner may testify to the value of his property, that does not make it competent. An owner is only qualified to express an opinion of value in a reasonable way and in accordance with the proper standards for determining fair market value; what it is worth to him is not a correct basis. If the owner's opinion is not within these rules, it has no probative value in a condemnation case. *Coronado Oil Company v. Grieves,* supra. The testimony of the Mackeys' neighbor and expert was worthless for valuation purposes in fixing just compensation. There is no way to reach a before and after value from any of the owners' evidence.

■ The only competent testimony was that produced by ETSI. There is no doubt that the presence of this type of easement affects land value as a detriment, however minor the extent. So with respect to the ETSI evidence of no effect on the remainder, that evidence standing alone would possibly be inadequate, but that is not to say the testimony of that expert is not supportive of the before and after evidence testified to by ETSI's other expert. It must always be remembered that the value before the taking and the value after the taking are the basic ingredients to reaching just compensation.

■ There was a complete failure of the owners to prove the just compensation to which they were entitled.

### III

While our holding as to the first issue is dispositive and ground for reversal and a new trial, there is a likelihood the remaining issues will arise again, so we shall decide them. *Coronado Oil Company v. Grieves,* supra.

### IV

■ The form of the jury instructions and verdict set out at the opening of this opinion were adequate but apparently misunderstood by the jury in that the figures entered in the blank spaces provided did not show the value of the Mackey ranch before the taking of the easement and the value of the ranch unit after the taking. It is obvious that $50,500 was not the value of the ranch before the taking, and $505 was not the value of the ranch after the taking. We have no idea where the jury got those figures; the record discloses no clue at all. The verdict was defective in substance. Section 1–11–213, W.S.1977 provides:

> "If a jury disagrees, or if when the jury is polled a juror answers in the negative, *or if the verdict is defective in substance, the jury shall be sent out again for further deliberation* and either party may require the jury to be polled by the clerk or court asking each juror if it is his verdict."

This statute was considered by this court in *DeWitty v. Decker,* Wyo., 383 P.2d 734 (1963) and it was held that upon objection being made, the court may instruct the jury further and the jury may correct its verdict. A proper objection was made in the case before us, before the jury was discharged. Accordingly, the jury should have been further instructed and accorded an opportunity to reconsider and correct their verdict. It was error for the trial judge to not do so. We will not conjecture as to whether it would have then returned a verdict based on competent evidence.

■ While a jury verdict designed to arrive at value must be within the lower and upper range of the evidence, it must be based on competent evidence. *Coronado Oil Company v. Grieves,* supra. None of the competent evidence in the case before us will support the verdict returned.

### V

Appellant's next issue deals with failure of the trial judge to instruct the jury on burden of proof and preponderance of the evidence. At the instruction conference at the close of all the evidence, ETSI offered instructions in that regard:

> "The burden of proof is upon the landowners to establish, by a preponderance of the evidence, the amount to which they are entitled to be compensated. By

'burden of proof' is meant the obligation resting on the party who has the burden of proof, a proposition to establish the same by a preponderance of the evidence presented in the case."

and

"You are instructed that by a preponderance of the evidence is meant not necessarily the greater number of witnesses, but that amount of evidence which, taken on the whole, produces the stronger impression upon the minds of the jury and convinces you of its truth when weighed against the evidence in opposition thereto."

Strong, fully supported objections were made to the failure of the court to give these instructions as required by Rule 51, W.R.C.P., *Haley v. Dreesen,* Wyo., 532 P.2d 399 (1975), and an opportunity thus afforded the trial judge to correct any error. We agree with ETSI that the court was in error.

▮ The landowners in eminent domain cases have the burden of proving the just compensation to which they are entitled. *Coronado Oil Company v. Grieves,* supra; *State Highway Commission v. Laird,* Wyo., 426 P.2d 439 (1967); *Wilson v. United States,* 350 F.2d 901 (10th Cir. 1965). This is the general rule, 5 Nichols on Eminent Domain § 18.5.

▮ This is not an idle statement of a rule meant to be disregarded. The burden is placed on landowners because they have turned down the offer deemed fair by the condemnor and created the issue, even though raised somewhat differently than through the pleadings in the usual civil case. It would be of no use to even state the rule if not put into practice. It is

designed for the use of the fact finder to aid in decision making in the face of a conflict of evidence which is usually the case in critical evidentiary areas in jury tried litigation. There was an extreme conflict in the case before us. We cannot speculate as to whether it would have changed the verdict, but it must be assumed that the jury would have had better guidance if it had been so instructed.

Rule 71.1(a) and (j), W.R.C.P.,[3] pertaining to the condemnation of property provides that the Wyoming Rules of Civil Procedure govern the procedure and conduct of trial in the same manner as trials in civil actions. It is our observation from the examination of many records that in trials by jury in civil cases the giving of burden of proof and preponderance of evidence instructions is standard practice. The two go together and were combined as Instruction 3.01 in the Wyoming Civil Pattern Jury Instructions.

Early on this court held that where a party has a burden of proof on a particular issue, it is error by the trial court to refuse to give such instruction when requested. *McClintock v. Ayers,* 36 Wyo. 132, 253 P. 658, reh. denied 36 Wyo. 156, 255 P. 355 (1927). The judgment there was reversed and the case remanded for a new trial. As we see it, the failure to give instructions on burden of proof and preponderance of evidence in condemnation cases is no different than the failure to give such instructions in other types of civil cases.

This court in *Northwest States Utilities Co. v. Ashton,* 51 Wyo. 168, 182, 65 P.2d 235, 238 (1937), reh. denied, in discussing the consideration of circumstantial evidence said:

---

3. Rule 71.1(a) and (j), W.R.C.P. in pertinent part:

   "(a) *Applicability of other rules.*—The Wyoming Rules of Civil Procedure govern the procedure for the condemnation of real and personal property under the power of eminent domain, except as otherwise provided in this rule.

   \* \* \* \* \* \*

   "(j) *Jury trial.*—When an assessment shall have been regularly made by the appraisers, as aforesaid, either party, within thirty (30)

days after the filing of the certificate of such assessment, if not satisfied with the award, may demand, and shall be entitled to, a trial by jury in the district court of the issue of just compensation.

   \* \* \* \* \* \*

   "(2) Procedure in Trial by Jury.—The said trial by jury shall be conducted in the same manner as trials by jury in civil actions, and the provisions of Rule 59 of these rules relating to new trial shall be applicable."

" * * * No doubt a defendant in a civil action is entitled to an instruction that if the jury finds that the more reasonable conclusion drawn from all the circumstances shown by the evidence favors his contention the jury should render its verdict accordingly; or, if the jury finds from all the evidence that two *equally reasonable* inferences or conclusions may be drawn, one favoring the plaintiff and the other the defendant, then the plaintiff has failed to substantiate his case by a preponderance of the evidence and must fail. * * * " (Emphasis in original.)

This pertinent statement is equally applicable to condemnation cases. Many of the facts to establish value and highest and best use are circumstantial. While the owners are named as defendants in a condemnation action, a transposition of designation of parties in the quote renders it applicable.

Without instructions on burden of proof and preponderance of evidence, the jury is left to shift for itself in analyzing and applying evidence—not always easily understood. To illustrate this, the discussion of Justice Blume in *First National Bank of Morrill v. Ford,* 30 Wyo. 110, 216 P. 691, 31 A.L.R. 1441 (1923) points out that:

" * * * A considerable amount of confusion has no doubt existed and exists today in the minds of bench and bar as to the meaning of burden of proof and what has been called burden of evidence. The latter term is not exceedingly apt, and if used in an instruction to a jury, without full explanation distinguishing it from burden of proof, would in all likelihood be very confusing; but it may be here used for the purpose of distinguishing it from the burden resting upon a party to establish his case.

"The burden of proof is upon the party asserting the affirmative of an issue, using the latter term in the larger sense and as including any negative proposition which such party might have to show. If he alleges a fact that is denied, he must establish it. He is the actor, and as such remains so throughout the case as to the allegations which he makes, or rather must make. Having alleged the truth of a matter in issue, he must prove it. The party denying his allegations cannot have this burden at any time during the trial, for it would be absurd to say that both the plaintiff and defendant have the same burden on the same issue. [Citation.] Hence the common phrase that the burden of proof never shifts, though the burden of going forward with the evidence may shift at various times during the trial from one side to the other, as the evidence is introduced by the respective parties. * * * "

See also, *Castor v. Rice,* 71 Wyo. 99, 254 P.2d 189 (1953), where the same proposition is reiterated.

The instructions offered and refused express, in as elementary terms as it seems possible, the forces involved in the burden of proof as related to evidence and express how the jury should involve itself in that regard. The jury needed that, particularly on the matter of highest and best use which is of a more abstract nature than value. With the burden of proof goes the right to open and close the evidence, 5 Nichols on Eminent Domain § 18.5[2], considered an advantage by some.

## VI

The final issue is whether the district court should have given ETSI's offered instruction:

"You are instructed that no compensation shall be awarded where construction of the project merely causes personal inconvenience, annoyance or discomfort to the occupants of property unless such results are causative factors in the depreciation in the value of land."

Failure to give the instruction was regularly objected to.

We held in *Coronado Oil Company v. Grieves,* supra, that personal inconvenience, annoyance and discomfort are not compensable unless causative factors depreciating the value of the land, citing *Wyoming State Highway Department v. Napolitano,* supra. We emphasized that

the sole purpose of the trial was to determine the fair market value of the land, not any damage to owners and individuals. However, before a jury instruction can be given, there must be evidence before the jury to which it may apply the rule of law encompassed by the instruction. *Hernandez v. Gilveli,* Wyo., 626 P.2d 74 (1981); *Beard v. Brown,* Wyo., 616 P.2d 726 (1980).

In the trial before us, the only reference to these factors in the testimony appeared in questions directed by the Mackeys' counsel to one of ETSI's appraisers:

"Q. You didn't take into contemplation any right, right to quiet enjoyment in your appraisal? The right to quiet enjoyment of the property; isn't that one of the rights?

"A. It possibly could be.

"Q. Okay. You didn't fit that in your appraisal, and you know you didn't?

"A. No."

Counsel for the Mackeys apparently tried to parlay this, or something out of the air, into an argument in his closing to the jury:

"Just talking to, about some things that seem to be pretty well ignored in this trial by people from Environmental Transport. One of the prime problems is they still have a right to live on their little ranch and be left alone. That's worth something, just be left alone, not be bothered.

"If you like jackrabbits and you get right in and raise jackrabbits, that's your own business.

"And condemning property is a pretty frightening concept if you stop and think about it.

"You know, if we go back to our common law history, there's a concept of a freed man, came from England, in which a man was no longer a servant, he was not a chattle, he didn't belong to the lord. He could have his own land. We have to assume that, with that land, we should have the right to privacy, or it wouldn't be important to own. You really wouldn't want people just tromping across the property anytime they wanted or through your back yard of your house or go through your apartment. Can you imagine anything more irritating?

"I live in a modest townhouse in Casper. I don't want to come home and find somebody rambling around my living room, just use the keys and help themselves to a little coffee. Somebody I don't even know.

"Let's translate that up to a ranch. The right to just be able to live there and be left alone, not have people just building pipelines through it, particularly people like you don't understand the tremendous water flow. Nobody apparently at this point in time seems to know what happens if one ruptures. I don't know. Just don't."

While such argument was improper, no objection was made. At that point, objection could have been made; and it may have been appropriate, upon request, for the court to incorporate the offered instruction into the one given to the jury to disregard that argument. That was not done. ETSI contented itself with pointing out in its closing argument the essence of the instruction of the court that "you must not consider as evidence any statement of any attorney made during the trial." Since there was no evidence of personal inconvenience, annoyance or discomfort, the instruction was properly refused.

Reversed and remanded for new trial.