PETTY–RAY GEOPHYSICAL, DIVI-
SION OF GEOSOURCE, INC., Appel-
lant (Defendant and Third-Party Plain-
tiff),

v.

James A. LUDVIK, Appellee (Plaintiff),

Twiford Ranch, Inc., a Wyoming corpo-
ration, Appellee (Third-Party
Defendant).

No. 85–258.

Supreme Court of Wyoming.

April 22, 1986.

Rehearing Denied June 26, 1986.

Susan K. Overeem, Casper, for appellant.

Frank J. Jones of Jones & Weaver, P.C., Wheatland, for appellee Ludvik.

Stephen N. Sherard, Wheatland, for appellee Twiford Ranch, Inc.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellee James A. Ludvik (hereinafter Ludvik) brought suit against appellant Petty-Ray Geophysical (hereinafter Petty-Ray) for actual and punitive damages resulting from Petty-Ray's entry upon Ludvik's property without consent and subsequent seismographic exploration. Petty-Ray answered and filed a third-party complaint against Twiford Ranch, Inc. (hereinafter Twiford) as lessee of the property. From a judgment in favor of Ludvik, Petty-Ray now appeals.

We reverse.

Petty-Ray raises the following issues:

"I. In the absence of a provision in the lease, is the lessor or the lessee entitled to grant permission to the geophysical company for entry and to receive the permit fees for entry.

"II. Was Defendant Petty-Ray a trespasser as to be liable for punitive damages.

"III. Are the damages for trespass assessed against Defendant Petty-Ray in actuality punitive damages, although ostensibly denominated as compensatory.

"IV. Did the trial court err in assessing damages of one-half (½) of the permit fees against Defendant Petty-Ray in favor of the Plaintiff.

"V. What is the measure of actual damages to the lessor's reversionary interest.

"VI. Did the trial court err in its assessment of actual damages against Defendant Petty-Ray in favor of the Plaintiff."

Ludvik restates the issue as follows:

"Was there sufficient evidence to support the decision of the trial court?"

In the fall of 1983, Petty-Ray was conducting geophysical exploration in Platte County, Wyoming. An agent of the company contacted Twiford to obtain permission to conduct seismographic exploration on his land. During the negotiations, Twiford advised the agent that he could give

Petty-Ray permission to conduct further exploration on land belonging to Ludvik, because Twiford held the land under a lease with option to buy. When the discussion concluded, Twiford signed a geophysical permit in which he gave Petty-Ray his permission to enter and explore. The lands described in the permit included land owned by Twiford and land leased to Twiford by Ludvik. The permit also provided for payment of an $800-per-mile fee for permission to enter and explore and for normal damage resulting from such exploration.

Pursuant to the permit, Petty-Ray entered upon the lands and began exploration in October of 1983. Exploration was concluded in February of 1984. Permit fees were paid to Twiford in accordance with the agreement. Due to weather conditions, more than the usual ruts and grass damage occurred during exploration. As payment for the excess damage, Petty-Ray issued a check to Twiford in the sum of $4,800.

Upon discovering the ruts and grass damage, Ludvik filed suit against Petty-Ray. In his complaint, Ludvik alleged that he was the owner of the described property; that Petty-Ray conducted seismographic exploration on the property without his consent; and that Petty-Ray's entry, therefore, constituted a trespass. Petty-Ray answered, admitting that seismographic exploration had been conducted on the land described but denying that it was done without permission. In its third-party complaint, Petty-Ray claimed that Twiford had represented to Petty-Ray that he was the lessee of the property with the sole legal authority to grant permission to enter; that in reliance on Twiford's representations, Petty-Ray entered and conducted explorations on the land; that Petty-Ray paid the permit fee and additional damage payments to Twiford; and that, therefore, any damages awarded to Ludvik against Petty-Ray must be repaid by Twiford to Petty-Ray.

On August 12, 1985, Ludvik filed a motion for summary judgment. Thereafter, Petty-Ray and Twiford each filed a motion for summary judgment. A hearing on the motions was set for September 3, 1985. A summary judgment nunc pro tunc was filed on October 3, 1985, in which the trial court made the following findings:

"1. That Defendant Petty-Ray is liable to Plaintiff for actual damages to the subject property.

"2. That Third party Defendant Twiford was the lessee of the subject property and had the legal right to give permission to Defendant Petty-Ray to go upon the property and to receive the permit fees of $800 a mile.

"3. That Defendant Petty-Ray was not a trespasser and punitive damages do not lie.

"4. That there exists a question of fact concerning the $4,800.00 payment made to Third Party Defendant Twiford by Defendant and Third Party Plaintiff Petty-Ray for repair of extensive rutting and grass damage."

On the basis of these findings, the trial court issued the following order:

"1. That partial Summary Judgment be and hereby is granted to Plaintiff Ludvik on the issue of Defendant Petty-Ray's liability for actual damage.

"2. Plaintiff's Motion for Summary Judgment as the same pertains to the amounts due for actual damage be and hereby is denied.

"3. That partial Summary Judgment be and hereby is granted to Third Party Defendant Twiford Ranch as to the issue of reimbursement to Defendant and Third Party Plaintiff for all sums paid for the right to enter upon and conduct seismic operations on the subject property which Twiford held under lease.

"4. That Defendant Petty-Ray and Third Party Defendant Twiford Motion for Summary Judgment as the same pertains to the issue of the $4,800.00 paid and received for repair of permanent damage be and hereby is denied.

"5. That partial Summary Judgment be and hereby is granted to Defendant Petty-Ray on the issue of trespass and liability for punitive damages."

Meanwhile, on September 9, 1985, the matters remaining were tried to the court. Judgment was entered on September 30, 1985, for Ludvik in the sum of $4,360 plus costs.

We appreciate Petty-Ray's carefully detailed statement of the issues but find that, in essence, only one issue is before us: Whether the court's assessment of damages is sufficiently supported by the evidence.

In order to determine whether the trial court's judgment is correct, it is necessary for this Court to examine the record to see if there is evidence to support the $4,360 award.

When discussing the sufficiency of the evidence, we have said that a judgment will stand if there is any evidence to support it.

*Pine Creek Canal No. 1 v. Stadler,* Wyo., 685 P.2d 13 (1984).

Ludvik testified that, in his opinion, it will cost approximately $28,000 to $30,000 to put the land in the state it was in before Petty-Ray went across it, and, of that amount, it would take somewhere near $8,000 to restore what he considered to be permanent damage.

Mr. Leach was called as a witness for Petty-Ray to testify as to the cost of reclaiming the damaged land of Ludvik. He stated that the total damaged area, consisting of approximately one-half acre, could be repaired at a cost of $600. He indicated that of this one-half acre only 7,500 square feet were permanently damaged.

Mr. Briggs, a professional appraiser, was called as a witness for Petty-Ray to testify as to the value of Ludvik's damaged land. He also stated that the total damaged area consisted of approximately one-half acre.

The law is well settled in Wyoming that when the cost of restoring permanent damage to real property is great, the measure of damage is the difference between the value of the property immediately before and the value immediately after the injury. *Belle Fourche Pipeline Company v. Elmore Livestock Company,* Wyo., 669 P.2d 505 (1983); *North Central Gas Company v. Bloem,* Wyo., 376 P.2d 382 (1962); *Town Council of Town of Hudson v. Ladd,* 37 Wyo. 419, 263 P. 703 (1928).

Proof of before and after values must be by competent and permissible evidence. *Energy Transportation Systems, Inc. v. Mackey,* Wyo., 650 P.2d 1152 (1982). In the case before us, there was competent evidence given by Mr. Briggs that the value of Ludvik's land immediately before the damage was approximately $125 per acre, but there was no testimony as to the value of the land immediately after the permanent damage.

Ludvik contends that not only did the trial judge have testimony as to the damages, but he also viewed the premises and observed the damages firsthand, and that such gives additional support to the judgment.

It is true that this Court has on occasion stated that when a trial court views land in question under certain circumstances, we must give special weight to its findings. *Pfister v. Brown,* Wyo., 498 P.2d 1243 (1972); *Masek v. Ostlund,* Wyo., 358 P.2d 100 (1960); *Erickson v. Hudson,* 70 Wyo. 317, 249 P.2d 523 (1952).

In this connection, the trial court stated: " * * * I looked at the Ludvik ranch and it's a beautiful place. It has a lot of sagebrush and trees and I don't know just what the grazing capacity of the place is, but for one thing, it's very pretty.

\* \* \* \* \* \*

"Certainly there wasn't anything allowed for the extra damages for the cats going down the hillside and making the extra trails and moving aside the rocks. And it's a very poor ecological system there where the topsoil is very thin and subject to damage.

\* \* \* \* \* \*

" * * * I don't think the big areas can ever be repaired without some equipment—I added a thousand dollars for that for a total judgment of $4360.
" * * * And I really suppose the $400 extra a mile is a little bit of a penalty for Petty-Ray, * * * but I have to consider that is their own fault * * *."

Even if we were to consider these statements findings which should be given special consideration, they do very little to help Ludvik when applying them to our standard for determining the value of the permanent damages to his land.

It is clear from the above that the trial court's assessment of damages of $400 a mile for 8.4 miles, or $3,360, is not based on any evidence of permanent damage to Ludvik's land and is, at best, in fact, punitive damages for trespass. The record reflects that there was sufficient evidence introduced at trial to justify the trial judge's comments concerning punitive damages; however, any award for trespass was improper as he previously granted a motion for summary judgment for Petty-Ray on this question.

In defense of the trial judge, we note at this juncture that, based on the pleadings and affidavits before him at the time of hearing the summary judgment motion, he was not unjustified in granting the motion. One of the inherent problems in granting a motion on some but not all of the issues is that evidence at a trial sometimes comes in indicating, in hindsight, the motion may have been improvidently granted. This is one of those cases.

We do not give special consideration to the trial judge's opinion of the cost of repairing the permanent damages based on his personal observations not only because

it would be improper without other substantial evidence to support it, but also because it is the improper measure of damage in any event.

 As there is nothing in the record to indicate the value of the land immediately after being permanently injured, there is no way to compute the damage based on the standard previously adopted by this Court.

Reversed.

URBIGKIT, Justice, concurring in part and dissenting in part.

I concur in the decision of this court that the proof of damages was not sufficient to sustain the judgment entered by the trial court, but would remand the case for retrial on damages only. Liability is not now in issue. Likewise not questioned is the fact that some damages exist, and that appellant should be liable for *actual damages*.

Consequently, I would remand for retrial for determination of damages in consonance with the rules of law required by this court. *Belle Fourche Pipeline Company v. Elmore Livestock Company*, Wyo., 669 P.2d 505 (1983); *Energy Transportation Systems, Inc. v. Mackey*, Wyo., 650 P.2d 1152 (1982); *Reynolds v. Tice*, Wyo., 595 P.2d 1318 (1979). Cf. *Anderson v. Bauer*, Wyo., 681 P.2d 1316 (1984); and *Adel v. Parkhurst*, Wyo., 681 P.2d 886 (1984).

THOMAS, Chief Justice, dissenting.

I must dissent from a result of simply reversing this case. The majority opinion relies on *Belle Fourche Pipeline Co. v. Elmore Livestock Co.*, Wyo., 669 P.2d 505 (1983), in which this court in a somewhat similarly awkward situation remanded the case for a new trial. This court very appropriately remarked, "Appellees are entitled to something." *Belle Fourche Pipeline Co. v. Elmore Livestock Co.*, 669 P.2d at 514. I believe that to be the situation in this case. Many years ago this court noted an exception to the general rule with respect to damages to real property to the effect that:

"It is true that where the damage to real property is of a temporary character, or where it can be repaired at a small expense, the cost of the repair has often been held to be the measure of damages."

*Town Council of Town of Hudson v. Ladd*, 37 Wyo. 419, 426, 263 P. 703 (1928).

The court has not receded from that dictum.

In this instance, I agree that it was not appropriate for the district court to attempt to apportion the $800 per mile trespass fee by awarding $400 a mile to Ludvik. The amount paid for the trespass fee really had no relation to Ludvik's damages. On the other hand there was testimony before the trial court, concededly provided by the appellant, that the permanently damaged area could be repaired at a cost of $600. In the language of the quoted exception and in consideration of prices in today's world that cost of repair seems a relatively small expense. The district judge enhanced that figure by $400, but his actions in so doing would be acceptable in accordance with *Phelps v. Woodward Construction Co.*, 66 Wyo. 33, 204 P.2d 179 (1949). I would not, therefore, reverse this judgment, nor would I remand the case for a new trial on the issue of damages. I would modify the judgment by reducing it to the amount of $1,000 and remand the case for entry of judgment in that amount.