UNITED STATES of America, Appellee,

v.

**Giuseppe PUGLIESE and Pietro Pugliese, Defendants–Appellants.**

**No. 1335, Dockets 88–1018, 88–1020 and 88–1099.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 15, 1988.

Decided Oct. 17, 1988.

Ivan Stephen Fisher, New York City (Harvey B. Baum, New York City, of counsel) for defendants-appellants.

Ephraim Savitt, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y. of counsel) for appellee.

Before WINTER and MINER, Circuit Judges, and BILLINGS*, District Judge.

BILLINGS, District Judge:

Defendants-appellants Giuseppe Pugliese and Pietro Pugliese appeal from sentences imposed in the United States District Court for the Eastern District of New York (Charles Sifton, Judge). Defendants-appellants argue in this appeal that the district court abused its discretion in enhancing their sentences. Defendants first argue that the district court's findings of fact were unsupported by the evidence presented at the pre-sentence hearing; and second, that they were improperly held criminally responsible for the acts of others. Defendant-appellant Giuseppe Pugliese also appeals from denial of his post-sentence motion to correct the written Judgment and Commitment Order to properly comport with the sentencing court's earlier oral pronouncement of sentence. Because we find the district court properly considered evidence of defendants' involvement in a criminal organization and properly clarified an ambiguity in the oral pronouncement of sentence through the written judgment and commitment order, we affirm.

## BACKGROUND

After jury trial in October, 1985, defendants Giuseppe Pugliese and Pietro Pugliese were convicted on counterfeiting charges stemming from their participation in the distribution of counterfeit fifty-dollar bills. On December 3, 1985, Judge Bramwell sentenced each defendant to a total sentence of thirty (30) years. On appeal, this Court vacated the sentences imposed by Judge Bramwell (United States District Court for the Eastern District of New York) and remanded the case for resentencing to another district court judge for the Eastern District of New York. *United States v.*

---

* Hon. Franklin S. Billings, Jr., U.S. District Judge for the District of Vermont, sitting by designa-

tion.

*Pugliese*, 805 F.2d 1117 (2d Cir.1986). In *Pugliese*, we concluded that prior to examining *Fatico* materials, the district court had expressed a "fixed view" that defendants had participated in some way in the shooting of Vincenzo Quagliata, a government witness. In remanding the case for resentencing, we indicated that we were not adjudicating defendants' claim that they had not been involved in the shooting. Rather, we directed the district court to consider all relevant evidence linking defendants with the murder attempt.

On April 22–24, 1987, Judge Sifton conducted a presentence hearing concerning the allegations of defendants' responsibility for the shooting. Subsequently, at a hearing held on December 9, 1987, Judge Sifton found the government had not established that either defendant had ordered, directed, or authorized the shooting of Vincenzo Quagliata. Nonetheless, he denied defendants' motion to strike all reference in their pre-sentence reports to the attempted murder because he found the evidence established that:

1) Both defendants were members of, and Giuseppe Pugliese was a leader of, a criminal group or organization which engaged in large scale criminal activities over a substantial period of time;

2) A characteristic or "ethic" of this group was that its members would not cooperate with law enforcement;

3) The ethic was enforced by threats and violence; and

4) Vincenzo Quagliata was shot as a consequence of the ethic.

In imposing sentence on January 6, 1988, Judge Sifton stated that the sentences would reflect his determination that both defendants were "levelly accountable" for the shooting of Quagliata by virtue of their membership and participation in the criminal organization responsible for the shooting.

Judge Sifton then imposed an aggregate sentence of twenty (20) years on Giuseppe Pugliese as follows: 5, 15 and 10 years on the respective counts. The 10 year term was to run concurrently with the terms imposed under the first two counts. The terms imposed under the first two counts were to run consecutively with each other. Judge Sifton also imposed an aggregate fine of $15,000 and a statutory special assessment of $150.

Judge Sifton imposed an aggregate sentence of fifteen (15) years on Pietro Pugliese as follows: 5 years on Count 1; and 10 years on Counts 2, 3, and 4. Counts 1 and 2 were to run consecutively. Counts 3 and 4 were to run concurrently with the terms under Counts 1 and 2. Judge Sifton also imposed an aggregate fine of $15,000 and a statutory special assessment of $200.

A Judgment and Commitment Order issued January 11, 1988, provided that the term of imprisonment imposed on Giuseppe Pugliese was to run consecutively to a sentence imposed by Judge Leonard Wexler for an earlier narcotics conviction in the Eastern District of New York. Defendant Giuseppe Pugliese moved, pursuant to Fed. R.Crim.P. 36, to correct the Judgment and Commitment Order to conform to the oral pronouncement of sentence. Contending that the oral pronouncement of sentence did not indicate that it was to run consecutive to the 10 year sentence previously imposed by Judge Wexler, defendant Giuseppe Pugliese argued that because the Judgment and Commitment Order conflicted with the prior oral pronouncement, the terms of the oral pronouncement controlled.

On March 1, 1988, Judge Sifton denied the motion, holding that he had intended to impose sentence consecutively to the earlier sentence and accordingly had reduced the sentence by the amount of time Judge Wexler had imposed. In addition, he found that an ambiguity was created by his reference during the oral pronouncement to Judge Wexler's earlier sentence for narcotics dealing. Judge Sifton held that the ambiguity was properly clarified in the written Judgment and Commitment Order.

## DISCUSSION

### I. Enhancement of Defendants' Sentences

Defendants argue that their sentences were improperly enhanced because there

was no evidence to support the finding of their membership or participation in the criminal organization responsible for the Quagliata shooting. Even assuming the evidence supporting such a finding, defendants argue that their sentences were improperly enhanced because they cannot be held vicariously responsible for the acts of others simply by reason of their association with that group.

## A. Sufficiency of the Evidence

As this Court held in *Pugliese*, a sentencing court "has an obligation to assure itself that the information upon which it relies in sentencing defendants is both reliable and accurate." *Id.* at 1124. The government has the burden of proving disputed pre-sentence report allegations by a preponderance of the evidence. *United States v. Lee*, 818 F.2d 1052, 1057 (2d Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987). In reviewing the district court's factual finding that defendants were members of the criminal organization responsible for shooting Quagliata, we must affirm unless such finding of fact is clearly erroneous. *Id.* at 1058.

On April 22–24, 1987, the district court conducted a hearing concerning the allegations in the pre-sentence report relating to defendants' responsibility for the shooting. In support of the allegations the government presented the testimony of Gerald Williams, Vincenzo Quagliata, and Michael Doyle. The government also offered into evidence transcripts of tape recorded conversations between Michael Doyle and Carmello Lovacco.

United States Secret Service Special Agent Gerald Williams testified concerning the criminal history of the defendants which included threats of violence, witness intimidation, and obstruction of justice.

Specifically, Special Agent Williams testified that following their separate arrests, Nicolo Atria and Michelangelo Causi, distributors of defendants' counterfeit money, agreed to cooperate with the Secret Service in the investigation of defendants. Atria and Causi obtained recorded incriminating conversations from appellants. However, neither Atria nor Causi ever testified against defendants. Atria failed to appear at a scheduled trial of Pietro Pugliese and advised Secret Service agents that Giuseppe Pugliese gave him $1,000 and ordered him to leave town and not testify against Pietro. Causi refused to testify and, through his attorney, informed government agents that he was afraid to testify. As a consequence, an earlier counterfeiting case against appellants was dismissed.

In May, 1984, federal agents arranged to interview Atria in an attempt to again solicit his cooperation. While in the United States Marshal's pen awaiting the interview, Atria accidently met Giuseppe Pugliese who had just been arrested on heroin trafficking charges. After that contact with Giuseppe Pugliese, Atria informed the agents that he would not cooperate with the government.

Ballistics tests conducted by the New York City Police Department demonstrated that the handgun used in the Quagliata shooting had also been used to murder Salvatore Parrino, a night watchman employed by Giuseppe Pugliese's Trinacria Construction Company.

 Vincenzo Quagliata agreed to cooperate with the government in its investigation of defendants. Following Quagliata's testimony before a grand jury, an indictment was returned against defendants for the 1982 counterfeiting violation. At the pre-sentence hearing, Quagliata testified that Tony Lipari told him that if he testified against Giuseppe and Pietro Pugliese, they would "blow his brains out". Quagliata described Tony Lipari as Giuseppe Pugliese's bodyguard. Quagliata also testified that the Puglieses had two lawyers, one of whom was also Quagliata's lawyer. During preparations for Quagliata's trial, both of the lawyers, in the presence of the Puglieses, instructed him to testify that Nicolo Atria had given him the counterfeit money. The truth, Quagliata testified, was that Giuseppe and Pietro Pugliese had given him the money. When Quagliata asked if Atria would testify against him, Pietro Pugliese told him not to worry, as Atria would not

come to court because Giuseppe had given Atria $1,000.

Michael Doyle began cooperating with the government following his arrest for unlawful possession of firearms in 1985. In the course of Doyle's association with several organized crime crews in Brooklyn, New York, he worked with and became a friend of Carmello Lovacco. Doyle testified to information he learned from Lovacco concerning a criminal organization of which Giuseppe Pugliese was the "big man" who ran the whole Sicilian crew. He also learned that Pietro Pugliese was a member and participant in the same criminal organization. Doyle also learned of the criminal group's attitude toward "rats" or government informants and its willingness to use violence to prevent individuals from testifying. Lovacco told Doyle that he had driven the car involved in the Quagliata shooting and in the course of that conversation asked Doyle if a newspaper article concerning the shooting had mentioned the name Pugliese.

The foregoing testimony details defendants' involvement with other individuals in organized criminal activities, including counterfeiting, witness intimidation, and obstruction of justice. In addition, the testimony of Michael Doyle reveals Giuseppe Pugliese's role as the "big man" or leader of the criminal organization. Taken as a whole, the testimony of these witnesses provides a basis for concluding that the criminal group of which defendants were members, and Giuseppe Pugliese was the leader, operated under a principle of conduct or "ethic", enforced by threats and violence, of preventing witness cooperation, and that the shooting of Quagliata resulted from the operation of this "ethic". Therefore, we find the district court's factual determinations are supported by the record and thus not clearly erroneous.

### B. Association with a Criminal Group

Defendants contend that even if the evidence were sufficient to find that defendants were members of a criminal association, it was improper for the district court to impose enhanced sentences, given that there was no finding of their criminal responsibility for the shooting of Quagliata.

The purpose of the pre-sentence hearing was to determine whether information contained in the pre-sentence report was accurate and reliable. That information permits the sentencing judge to "gain a fuller assessment of the defendant so that the punishment will ' "fit the offender and not merely the crime" ' for which he was convicted." *United States v. Hansen,* 701 F.2d 1078, 1082 (2d Cir.1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 723, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656 (1969) (quoting *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949))).

In fashioning a sentence to fit the offender, "a sentencing judge has wide latitude in taking into consideration all matters bearing upon the personal history and behavior of the convicted accused." *Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976). Thus, a sentencing judge may properly consider the past conduct, lifestyle, criminal associations, and moral propensities of defendants.

Because the government had established by a preponderance of the evidence that both defendants were members of, and Giuseppe Pugliese was a leader of, a criminal group or organization whose ethic of non-cooperation with the government was enforced by threats and violence and resulted in the shooting of Quagliata, the district court properly considered this information in imposing sentence on defendants.[1]

---

**1.** We do note that Judge Sifton's statement that "based on the evidence I've heard both defendants are levelly accountable even though they did not themselves order it" is internally inconsistent. Appellants' Joint Appendix at 260–61. Unless defendants had ordered, directed, or authorized the shooting of Quagliata they could not be "levelly accountable", although they might bear moral responsibility. Judge Sifton did, however, make clear in previous and subsequent statements that he was not imposing sentence on the basis of the misconduct of others but was imposing an "appropriate sentence for the crimes that they have committed in the light

## II. *Imposition of Consecutive Sentences*

Defendant Giuseppe Pugliese contends that because the oral pronouncement of sentence did not specify whether it was to be concurrent with or consecutive to his existing ten year heroin sentence, the district court improperly modified the sentence by providing for consecutive service of sentence in the Judgment and Commitment Order.

■■■ "[A]n all but conclusive presumption does exist in federal sentencing that unless otherwise stated a sentence imposed on a given count or indictment is concurrent with other federal sentences then imposed or previously imposed." *United States v. Wenger,* 457 F.2d 1082, 1083 (2d Cir.), *cert. denied,* 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972). Specifically, if an earlier sentence is not referred to by a sentencing judge, the later sentence is presumed to be concurrent to the earlier one. *Id.* In the event a variance exists between an unambiguous pronouncement of sentence and the written judgment and commitment, the oral pronouncement must control. *United States v. Marquez,* 506 F.2d 620, 622 (2d Cir.1974). When, however, there is genuine doubt concerning the oral pronouncement of sentence, "[a] commitment order may properly serve the function of resolving ambiguities in the orally pronounced sentence[ ]." *United States v. Moyles,* 724 F.2d 29, 30 (2d Cir.1983); *United States v. Villano,* 816 F.2d 1448 (10th Cir.1987).

■■■ In the present case, both the district court judge and defendant's counsel referred to the sentence previously imposed on defendant for a narcotics trafficking conviction. The district court judge did not state explicitly whether the sentence being imposed was to be consecutive to or concurrent with the earlier sentence. He indicated, however, that he intended to disregard the considerations that had led to the existing sentence. Although the court referred to the previous sentence, its inten-

tion was not entirely clear. The district court's statement could be considered an indication that he intended to impose a sentence that would be separate from the sentence previously imposed for narcotics trafficking; in that case the two sentences would run consecutively.

Thus, at the very least, the district court's reference to the earlier narcotics sentence without an explicit statement of whether the sentence being imposed was to run consecutively or concurrently with the earlier sentence created an ambiguity which was properly clarified in the written judgment and commitment order. The district court's denial of defendant's motion to strike the provision for consecutive service from the judgment and commitment order is affirmed.

### CONCLUSION

The sentences imposed by the district court are affirmed.

---

of their involvement in the group that I have described and their own conduct, their own state of mind." *Id.* at 229. As indicated above, consideration of defendants' involvement in a

criminal organization was entirely proper in determining an appropriate sentence to fit the offender.