Ann KAHLSDORF, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 90–162.

Supreme Court of Wyoming.

Dec. 31, 1991.

Leonard D. Munker, State Public Defender, Steven E. Weerts, Senior Asst. Public Defender, and Donald K. Slaughter, Legal Intern (argued), for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Karen A. Byrne, Senior Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Lawrence Saunders, Student Intern (argued), for appellee.

Before THOMAS, CARDINE, MACY and GOLDEN, JJ., and TAYLOR, District Judge.

CARDINE, Justice.

Ann Kahlsdorf appeals from an order sentencing her to one to ten years in prison for larceny by bailee under W.S. 6–3–402(b) and (c)(i) (1984 Cum.Supp.). This sentence was imposed after her probation was revoked for failure to file monthly probation reports and willful failure to pay ordered restitution.

We affirm.

Appellant raises the following issues:

"I. Whether it was proper for the trial court to extend appellant's probation in violation of Wyoming Statute 7–13–203 (1977) and *King v. State*, 720 P.2d 465 (Wyo.1986).

"II. Whether restitution was improperly ordered.

"III. Whether, when the trial court revoked appellant's probation for failure to pay restitution, its action violated the United States Supreme Court's decision in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

"IV. Whether appellant's right to speedy sentencing was violated."

## FACTS

Appellant's protracted journey through the justice delivery system began on August 20, 1984. On that day, she confessed to her supervisor that she had embezzled large sums of money while working as a bookkeeper for Pengo Wireline. Mrs. Kahlsdorf had taken checks entrusted to her by the company, endorsed them with her supervisor's signature and her own, cashed them, and kept the money.

At first, Mrs. Kahlsdorf had used the money to pay off old medical bills and to help her family get out of debt. But before long she began to purchase expensive consumer goods: a $1200.00 sewing machine, two television sets, an exercise bicycle, down payment on a car, trips to Jackson, Yellowstone and California, and other items. In all, Mrs. Kahlsdorf admitted to embezzling $51,000.00 before her conscience finally drove her to confess. According to her calculations, she was able to return unspent $6,315.96. This left Pengo Wireline, or more precisely the bank's insurance company, with a net loss which appellant estimated at $44,684.04.

The State elected to charge appellant with larceny of a single one of the larger checks, amounting to $18,090.00. She was charged with violating W.S. 6–3–402(b) and (c)(i) (1984 Cum.Supp.):

"(b) A bailee, a public servant as defined by W.S. 6–5–101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.

"(c) Except as provided by subsection (e) of this section, larceny is:

"(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,-000.00), or both, if the value of the property is five hundred dollars ($500.00) or more."

Appellant pled guilty to the charge of larceny by bailee. Because of her "exemplary conduct" in cooperating with the authorities, her lack of a prior record, and other factors, the prosecutor agreed with appellant counsel's recommendation of supervised probation. As a condition of her probation, he requested that she be ordered to make monthly restitution payments for the money she had embezzled.

Two procedural difficulties cropped up at the sentencing hearing, at which the trial court ordered probation for Mrs. Kahlsdorf. First, the parties could not, and did not, agree on the amount of restitution due, and so the court left the amount open. Second, the trial court did not state under

which statute, W.S. 7–13–301 or 7–13–203, it was "suspending and delaying" the judgement and sentence of the court and imposing probation. Instead, the trial court cited both statutes in its written order, and "7–13–203 and 7–13–302 [sic]" in its oral ruling.

After the trial court handed down its sentence, the department of probation prepared a restitution plan. The plan stated that Mrs. Kahlsdorf had embezzled a total of $48,289.35. She would repay this at the rate of $412.72 per month for 116 months and make a final payment of $413.83 in the 117th month. The payments would begin in July 1985. Mrs. Kahlsdorf signed the agreement, as did the trial judge and the prosecutor.

Barely six months later, on January 15, 1986, the clerk of court received a letter from Mrs. Kahlsdorf containing the September, October and November, 1985 payments and promising to remit December's payment "in two weeks." On February 18, 1988, the prosecutor moved for, and the court granted, an order to show cause why appellant should not be brought before the court for failure to make her restitution payments.

In response, appellant wrote the court a letter detailing her difficulties in making restitution payments. Appellant stated she planned to mail her federal and state income tax refunds of about $800.00 to the court. (She never did so.) She also promised to try to send $700.00 per month toward restitution.

The court held a hearing on the State's motion on March 23, 1988. Appellant did not appear. The court determined that her letter had "shown cause," and it did not hold her in contempt for failure to make payments. The prosecutor stated that he did not know, based on the documentation he had at that point, whether her failure to make restitution payments was willful.

No further action was taken until August 8, 1988, when after further missed payments the prosecutor again moved for an order to show cause. When appellant did not appear at the hearing, the prosecutor moved for revocation of probation, and the court issued a bench warrant for her arrest. Appellant returned to Wyoming for a probation revocation hearing, which took place on December 1, 1988.

At the hearing, appellant presented information concerning her financial condition and her alleged inability to pay restitution. It was established that she had paid a total of $3,858.00 in restitution since 1985. The court found that Mrs. Kahlsdorf had willfully failed to pay restitution. It revoked the probation that had been previously ordered and imposed a suspended sentence on Mrs. Kahlsdorf. Appellant was ordered to pay $320.00 per month towards restitution and to make monthly reports to her probation officer. The court sent Mrs. Kahlsdorf back to California with the admonition that she had "one foot in the grave and the other one on a banana peel."

On January 23, 1989, Mrs. Kahlsdorf filed her first and only monthly probation report under the court's new order. The State filed an Amended Motion for Revocation of Probation and Issuance of Bench Warrant on May 22, 1989. This motion charged that Mrs. Kahlsdorf had missed her December 1988, and February, April and May, 1989 restitution payments and had filed no monthly reports since January 1989.

No hearing was held on this motion until a year later, when Mrs. Kahlsdorf was brought into court on May 23, 1990. On May 30, 1990, the trial court held a probation revocation hearing. Appellant's probation officer testified as to delinquent notices she had sent to appellant and to the fact that she had only received two payments from appellant and only one monthly report.

The trial court revoked Mrs. Kahlsdorf's probation for failure to file reports and willful failure to pay restitution. It sentenced her to one to ten years in the penitentiary. Appellant took timely appeal from this order.

## DISCUSSION

### Standard of Review

■ The decision to revoke probation lies within the sound discretion of the trial

court. We will not disturb the court's decision absent a clear showing of abuse of that discretion. *Lower v. State*, 786 P.2d 346, 351 (Wyo.1990); *Chapman v. State*, 728 P.2d 631, 634 (Wyo.1986).

*Probation Greater than Allowable Maximum*

Appellant makes two arguments concerning the length of her probation. The first is that the initial order placing her on probation for ten years was in excess of the court's jurisdiction under W.S. 7–13–203 (Dec.1977 Repl.). The second is that the subsequent order revoking her first probation after she had already served nearly three years and seven months and placing her on probation for another ten years caused her overall probation time improperly to exceed the maximum allowable term for the offense. We will deal with each of these arguments separately.

In order to properly discuss appellant's first contention, we must determine whether appellant was placed on probation under W.S. 7–13–203 (Dec.1977 Repl.) or W.S. 7–13–301 (Dec.1977 Repl.). The trial court cited both statutes in its order imposing probation. However, probation must clearly fall under either one provision or the other. These two provisions contain different language and were designed to serve different functions.

Wyoming Statute 7–13–203 (Dec.1977 Repl.), or "old 203," was a provision for "first offender status." The current version of this statute, which differs in some respects from "old 203," is found at W.S. 7–13–301 (June 1987 Repl.). (For a detailed discussion of how "old 203" became the current 7–13–301, and how "old 301" became the current 7–13–302, see *Billis v. State*, 800 P.2d 401, 410–12 (Wyo.1990).) "Old 203" provided as follows:

"If any person is found guilty of or pleads guilty to any felony except murder, sexual assault in the first or second degree or arson of a dwelling house or other human habitation in the actual occupancy of a human being, the court shall ascertain whether the offense of which the accused is guilty is his first offense * * *. If the court is satisfied that he was a person of good reputation before the commission of the offense charged and had never before been convicted of any felony, and that if permitted to go at large would not again violate the law, the court may in its discretion * * * delay passing sentence and then parole the person * * *. The court, if satisfied at the time of appearance, that the person has demeaned himself in a law-abiding manner and lived a worthy, respectable life, *may by an order of record, continue parole for the period of five (5) years, at the expiration of which the court shall enter an order finally discharging the person * * *.* At any time before the final discharge of the person that the court believes that the paroled person has attempted to leave the state or failed to comply with the terms of his parole the court shall cause a warrant to issue for the apprehension and arrest of the person and require him to be brought before the court. The court shall inquire into his conduct since his parole, and if satisfied from the inquiry that the person has violated the terms of his parole and recognizance, the court may impose sentence upon the verdict or plea against him in the manner and to the same extent as though the passing of sentence had not been delayed and the person had not been paroled or permitted to go at large." (emphasis added)

The references in this statute to "parole" actually refer to probation. *Sorenson v. State*, 604 P.2d 1031, 1038 n. 6 (Wyo.1979).

Wyoming Statute 7–13–301 (Dec.1977 Repl.), "old 301," whose current version is found at W.S. 7–13–302 (June 1987 Repl.), provided for suspension of the imposition or execution of sentence or trial:

"After conviction or plea of guilty for any offense, except crimes punishable by death or life imprisonment, the court may suspend the imposition of sentence, or may suspend the execution of all or a part of a sentence and may also place the defendant on probation or may impose a fine applicable to the offense and also place the defendant on probation. With

the consent of a defendant charged with a crime, except a crime punishable by death or life imprisonment, the court may suspend trial and place such defendant on probation."

The question of which section was actually applied to the defendant arises in this case because W.S. 7–13–203 provides for probation of only five years whereas under W.S. 7–13–301 probation can extend up to the length of the maximum sentence provided for by the underlying offense. *Hicklin v. State*, 535 P.2d 743, 753, 79 A.L.R.3d 1050 (Wyo.1975). Appellant initially received probation of ten years. If she received probation under W.S. 7–13–203, her probation would be in violation of the terms of that statute. If she received probation under W.S. 7–13–301, her probation did not exceed legal length.

In *King v. State*, 720 P.2d 465 (Wyo. 1986), we addressed the question of whether the defendant was sentenced under W.S. 7–13–203 or W.S. 7–13–301. The sentencing order in that case was ambiguous: it stated that it was entered under 203, but the defendant received a suspended prison sentence, suggesting that it was entered under 301. We noted that the sentencing order contained language taken verbatim from 203, and the order, by its clear language, indicated it was entered pursuant to 203. We resolved the ambiguity by concluding that although a prison sentence was entered and suspended, the order was entered pursuant to 203.

"Because the order states that it was pursuant to § 7–13–203, because it tracks the language of § 7–13–203, and because to hold that it was entered under § 7–13–301 would result in appellant's liberty being more severely restricted, we find that the order was entered pursuant to § 7–13–203 and that the provision imposing a sentence was surplusage." *King*, at 469.

▉ Although the court's sentencing order in this case did not specify whether it was entered under 203 or 301, like that in *King*, it did contain language taken verbatim from 203: ·

"[i]f at any time during the period of the Defendant's probation and before the final discharge of the Defendant, the Court believes that she has failed to comply with the terms of her probation, the Court shall cause a warrant to be issued for the apprehension and arrest of the Defendant, Ann Kahlsdorf, requiring her to again be brought before the Court, where the Court shall impose a sentence upon the plea of Guilty in this matter in the manner and to the same extent as if the passing of sentence on Defendant had not been delayed and Defendant had not been paroled and permitted to go at large."

Furthermore, the court did not enter and then suspend a sentence of incarceration on appellant, which is consistent with first offender status under W.S. 7–13–203. Also, when appellant's attorney stated at the revocation hearing on December 1, 1988, that it was his understanding that the first probation had been imposed under the first offender statute, the trial court did not contradict him. Considering all the evidence and employing the reasoning in *King*, we hold that appellant's probation was granted under W.S. 7–13–203. Probation under 203 cannot extend longer than five years. The trial court, therefore, erred and entered an illegal sentence when it sentenced appellant to ten years probation under W.S. 7–13–203.

▉ Our rules of criminal procedure provide that the trial court has the power to correct an illegal sentence at any time. W.R.Cr.P. 36(a). Although a motion for correction of an illegal sentence is properly addressed ʼto the trial court in the first instance, in the interest of judicial economy we have considered such corrections when raised for the first time on appeal. *See Price v. State*, 716 P.2d 324, 328 (Wyo. 1986). Appellant's attorney tentatively explored the illegal probation length issue in the trial court at the revocation hearing of December 1, 1988:

"There's one issue that I'm somewhat reticent at this point to bring up. The original sentence, as I understand, was imposed under 7–13–302 [sic] and was not—there wasn't a sentence imposed

and it's my understanding that that statute only provides for a five year period of probation and there may be an issue of the validity of the sentence, your Honor. But I don't really want to get into that until I determine whether or not probation will be revoked at this point."

■ Appellant's counsel did not pursue the issue further, since appellant was placed back on probation as a result of the hearing. Thus, the trial court never had any real opportunity to rule on the illegality of sentence issue. Normally, we would remand for correction of the sentence by the trial court in the first instance. However, since the disposition of appellant's other issues on appeal depends on our holding as to this issue, it is in the interest of judicial economy to avoid a needless remand of this case. Therefore, we correct appellant's term of probation under the court's first order to the five-year maximum allowed under 7–13–203.

Since we make this correction, we must hold that Mrs. Kahlsdorf's probation ended on April 18, 1990, five years from the day her sentence was pronounced in open court. *See Chapman v. State,* 728 P.2d 631, 633 (Wyo.1986) (probation begins on date sentence pronounced). She could no longer be subject to revocation after April 18, 1990.

In fact, there were two revocations within the five-year period following the April 18, 1985 order placing appellant on probation. The first revocation occurred on December 1, 1988, and led to a suspended sentence and a second order of probation. We need not consider, in this context, the question of whether the entry of a second probation was effective under 203 to revoke the first. This question is unnecessary because the second revocation proceeding, which led to imposition of the prison sentence on May 30, 1990, was commenced May 23, 1989, which was within the first five-year probation period.

Appellant urges on us the theory that because she was not "informed of the charges and brought back to Wyoming to face probation revocation" until after the five years had expired, her probation was not revoked until after it had terminated by operation of law. Appellant argues, in essence, that revocation must be completed within the five-year period of probation. Thus we must decide at what stage a revocation proceeding becomes untimely.

In *Lackey v. State,* 731 P.2d 565, 568 (Wyo.1987), we dealt with the effective date of revocation of probation imposed under W.S. 7–13–301. In that case, we stated:

"Section 7–13–304, W.S.1977, provides in pertinent part:

"'At any time *during the period of * * * probation,* the court may issue a warrant and cause the defendant to be arrested for violating any of the conditions of probation * * *.' (emphasis added [*in Lackey*])

"While this section obviously does not require that revocation proceedings be completed within the probationary period, it does require that such proceedings be initiated during the period."

■ In *Lackey,* we held that since the State's second petition for revocation had not been filed during the probationary period, the order revoking Lackey's probation must be reversed. We used the filing date of the petition for revocation as the measure of timeliness. We think this same rule applies where § 203 probation is concerned, because § 203 contains similar language to that found in W.S. 7–13–304: the court may revoke probation "[a]t any time before the final discharge of the [probationer]."

■ In this case, probation revocation proceedings were initiated on May 15, 1989, when the prosecutor filed a Motion for Revocation and Issuance of a Bench Warrant for appellant's arrest. The trial court issued the bench warrant on the following day, well within the five-year deadline. Thus, the petition for revocation was timely.

In summary, we hold that appellant's first sentence of probation was entered under "old 203" and that proceedings for revocation of appellant's § 203 probation were properly commenced within its five-year period.

■ Appellant's second contention is that because she received an additional ten-year period of probation at the December 1988 hearing, after having spent almost three years and seven months on probation, she received a cumulative probation in excess of the maximum allowed sentence. (Although the court again cited both W.S. 7–13–203 and W.S. 7–13–301 in its order, and although it stated that it did not "intend to change the first offender status," appellant's second probation was clearly received under § 301; it was entered after § 203 probation had been revoked, and she received a suspended sentence of incarceration. The ten-year probation was thus in and of itself proper.) We note that appellant would not have been entitled to less than the statutory maximum sentence if she had been given prison time after her § 203 revocation. Wyoming Statute 7–13–203 makes this quite clear:

"[I]f satisfied from the inquiry that the person has violated the terms of his parole and recognizance, the court may impose sentence upon the verdict or plea against him *in the manner and to the same extent* as though the passing of sentence had not been delayed and the person had not been paroled or permitted to go at large." (emphasis added)

In other words, it does not violate the probation statutes when a defendant, having served time on probation, has her probation validly revoked and then receives the maximum sentence for her crime. We believe the same principle applies where probation is terminated and appellant receives a second sentence of probation which equals the maximum sentence for her crime.

Although we disapproved of an extension of the probationary period in *King*, 720 P.2d 465, *King* is distinguished from the facts of the present case. In *King*, the defendant had not had any action taken against him during his probationary period. No revocation was sought. He had complied with the order of restitution during the five years he was on probation. At the end of the five-year period, the trial court extended his probation solely because the payments he had made did not begin to pay off the debt he owed from his embezzlement. Under those circumstances, the court exceeded its authority when it failed to issue an order discharging the defendant at the end of five years. *King*, 720 P.2d at 470.

Here, appellant failed to make her payments. Once her probation was revoked, she could have received the maximum sentence for her crime. Instead, the trial court imposed sentence under "new 302" and gave her a lawful ten-year probationary term. We affirm the trial court's second order of probation.

*Restitution*

■ Appellant argues that the portion of her sentencing order imposing restitution on her was illegal because it did not specify the dollar amount of restitution and did not contain a specific finding of how restitution was calculated. A trial court has no inherent power to order restitution; it must rely on statutory authority. *Barnes v. State*, 670 P.2d 302, 303–04 (Wyo.1983). Appellant was sentenced to pay restitution under W.S. 7–13–109(b) (Cum.Supp.1984):

"At the time of sentencing a defendant for any misdemeanor or felony conviction, if the court desires to require restitution, the court shall fix a reasonable amount as restitution owed to each victim for pecuniary damages resulting from the defendant's criminal activity, and shall include its determination as a special finding in the judgment of conviction."

■ Our past cases have interpreted the restitution statute to require that the trial court make a specific finding of the amount of pecuniary damage supported by credible evidence in the record. *See Renfro v. State*, 785 P.2d 491, 493 (Wyo.1990), interpreting a later but similar version of this statute. We have stricken as illegal a provision which ordered restitution in an amount to be determined at a later time. *Keller v. State*, 771 P.2d 379, 387 (Wyo. 1989). However, we hold that appellant waived the statutory requirement by agreeing to a plan of restitution containing a

specific figure owed and monthly payments and by making some payments under the plan.

The trial court's order of April 24, 1985, required defendant to: "pay restitution in an amount to be approved by the Court." The court did not set a specific figure at sentencing because there was some confusion about the exact amount embezzled:

"THE COURT: * * * I note that Mrs. Kahlsdorf indicates that $51,000 was taken, which is not that far apart from $53,647.58 [the State's figure]. She indicates in her accounting that $6,315.96 was returned.

"MR. ANDERSON: That's correct, your Honor. We can verify that, that that money was returned to Pengo Wireline.

"THE COURT: Then why are you adopting the $43,647.58?

"MR. ANDERSON: I think the figure that was given to Mrs. Leary from Mr. Ingersall (sic) is a figure that includes interest up to this date, up to this time on the money. That was my understanding of how that figure was arrived at. Now, I don't think that Pengo Wireline—I don't think there is a double dipping going on * * *.

* * * * * *

"THE COURT: How did they verify the amounts?

"MR. ANDERSON: Through an examination of all the checks that were brought to the attention—It's my understanding that there was a meeting between Pioneer, Pengo and the insurance company wherein examination of Mrs. Kahlsdorf's accounts, Pengo's accounts were made and these figures were arrived at through that manner.

"THE COURT: How was the interest that you were speaking of computed and what was the rate?

"MR. ANDERSON: I can't tell you, Judge.

"THE COURT: Well, then, somebody tell me what the figure $53,647 is.

"MR. ANDERSON: I would have to have Intermountain Claims come in and explain that to you, Judge, and I didn't ask them to be present here today. If you would like, in imposing the judgment and sentence, we could leave the figure open. We could have a meeting with Mr. Phillips, Mrs. Kahlsdorf, Probation and Parole, myself and Intermountain Claims and Pengo to make sure that the figure is acceptable to all parties and then present that figure with an accounting of how we arrived at the figure to the Court for an additional or an addendum to the judgment and sentence if the Court has problems with the figures that we are adopting. * * *

"THE COURT: Okay. Thank you, Mr. Anderson. Mr. Phillips, anything further?

"MR. PHILLIPS: Your Honor, no. I had an inquiry about the figures also. I don't want to turn this into a civil case debating how much restitution should be paid. *Obviously, we are not in a position to quibble with the Court over restitution if Mrs. Kahlsdorf has an opportunity to get on the outside.* On the other hand, it sounds like somebody has picked up an extra 6,000 bucks and it might be wise to check through that and see what's happened.

"MR. ANDERSON: I agree with Mr. Phillips. I think we should have a—

"THE COURT: It's more than $6,000, isn't it?

"MR. PHILLIPS: That depends on the exact figure.

"THE COURT: It's closer to 10?

"MR. PHILLIPS: It's closer to 10 and I don't think Pengo should pick up $10,000 from Ann * * *.

* * * * * *

"THE COURT: * * * you [will] make restitution in an amount to be determined by the Court after your attorney, Mr. Phillips, and Mr. Anderson have had an opportunity to ascertain the answers to the questions which the Court has posed in the courtroom this morning as to whether or not the amount is 53 something or 44 something." (emphasis added)

There is no evidence in the record that this discrepancy was ever satisfactorily ex-

plained. Nor was any calculation or itemization ever presented to the court, other than appellant's. However, on July 17, 1985, appellant signed a "Victim/Restitution Payment Plan" which stated that "[a] total amount of $48,289.35 was taken by the Defendant." This document was also signed by the trial judge and the prosecutor.

Thus, we have an "order" for restitution appellant is alleged to have violated which specifies neither the amount of restitution nor how it was calculated. Nor does the record reveal how the Department of Probation and Parole arrived at its final figure for restitution due. Under our previous precedents, either of these omissions would require that we strike the provision for restitution and thus overturn revocation of appellant's probation.

The State urges the theory that appellant waived the right to challenge the lack of a specific finding and lack of evidence concerning the amount of restitution when she did not take timely appeal from her initial sentence. We cannot accept this argument, because the court retains the power to correct an illegal sentence at *any time.* W.R.Cr.P. 36(a). Lack of timely appeal cannot bar correction of an illegal sentence. Failure to take appeal, however, coupled with other factors in the record, is relevant to a related issue: Whether appellant waived her right to contest the lack of a specific finding and lack of evidence in the record by accepting and making payments under the restitution payment plan.

We first apply a waiver analysis to the requirement of a specific finding. In our previous cases interpreting the restitution statute, we have not had occasion to discuss whether the requirement of a specific finding is a right personal to the defendant or whether it is an independent requirement of sentencing. *See Renfro; Keller; Kaess v. State,* 748 P.2d 698 (Wyo.1987). A defendant may waive any of her personal rights "so long as there is no violation of public policy and the public's interests are not thereby jeopardized." *Taylor v. State,* 612 P.2d 851, 859 (Wyo.1980). *See also People v. Davis,* 93 Ill.2d 155, 66 Ill.Dec.

294, 297, 442 N.E.2d 855, 858 (1982) (requirement that court make "statement of reasons" for sentence was right personal to the defendant and could thus be waived).

In *Keller,* at 387, we indicated that the trial court exceeded its "authority" by ordering restitution without specifying an amount. Such a sentence, we said, is "illegal." *Id.* However, the "illegality" and "lack of authority" arise precisely because of the effect of noncompliance on a defendant's rights. The specific finding is placed in the court's order so that it may be reviewed in case the defendant appeals. This benefits the defendant as much or more than the "system." Therefore, we hold that the requirement of a specific finding is a right personal to the defendant, which she may waive.

The next concern is whether this waiver must be "knowing and intelligent." *Cf. Osborn v. State,* 806 P.2d 259, 271 (Wyo. 1991); *Martin v. State,* 780 P.2d 1354, 1356 (Wyo.1989) (statutory requirement of knowing and intelligent waivers connected with guilty plea). The right to a specific finding is a statutory rather than a constitutionally-based protection. Therefore, its waiver does not require an on-the-record inquiry by the trial court concerning knowledge and voluntariness. In order to protect the defendant, however, we hold that there must at least be evidence in the record that the defendant knowingly and voluntarily entered into the agreement to pay restitution which constituted the waiver.

There is evidence in the record which indicates that Mrs. Kahlsdorf knowingly and voluntarily entered into the agreement to pay restitution. At her first sentencing hearing, Mrs. Kahlsdorf indicated a willingness to pay what she owed:

"Q. * * * [W]ould you tell Judge Troughton why you believe you should be granted probation?

"A. Well, if I'm incarcerated and taken away from my family, how can I make restitution? No matter what you decide, I still have to do that and morally, I know that I've done wrong and *I have to take care of this no matter what it is,* it

would just be a delay in having to repay the money that was taken." (emphasis added)

In a letter Mrs. Kahlsdorf wrote to the court prior to sentencing, she stated as follows:

"I told [my employer] that I would cooperate in every manner possible and that I would make *restitution in full*, regardless of the time involved." (emphasis added)

These statements of the defendant indicate that she both knew and agreed that she would pay restitution in full, however much it might be. Her consent to the amount specified in the agreement is evidenced by her signature on it. Further evidence of her assent is found in the fact that she did not challenge the amount specified until the final revocation hearing five years later, although she had opportunities to do so. At her December 1988 probation revocation hearing, the court asked:

"THE COURT: * * * Does the Defense wish that the State make a prima facie case or are you willing to proceed on the basis that Mrs. Kahlsdorf admits that payment hasn't been made and would you then like to explain.

"[Counsel for Mrs. Kahlsdorf]: The latter, your Honor."

Given the circumstances, we hold that appellant validly waived her right to a specific finding in the court's order concerning the amount of restitution to be paid.

A different analysis applies with regard to the requirement that there be credible evidence in the record supporting the amount of restitution. This requirement grows out of the special finding requirement:

"We will follow our current decision on attorney's fees and proof of damages in general to determine that restitution should, in accordance with the statute, be established in amount by some credible evidence. *Petty–Ray Geophysical, Div. of Geosource, Inc. v. Ludvik,* 718 P.2d 9 (Wyo.1986), and then delineated within the special finding requirement of W.S. 7–9–103. Proof of the offense from which restitution may be required is an

intrinsic element of the proof of the crime and consequently requires the 'beyond a reasonable doubt' character of evidence. Proof of the restitution amount as a question of sentence need only be proved by credible evidence, by a preponderance, or burden of the evidence." (citation omitted) *Renfro,* at 493.

■ Although this requirement is also for the defendant's protection and thus capable of waiver, it is substantive rather than procedural, and its waiver thus requires a more careful review by this court. Thus, even where the defendant waived her rights in favor of an agreement, we will require a factual showing in the record that the amount consented to was reasonable.

■ There is evidence in this record which demonstrates the reasonableness of the figure agreed to. Appellant provided the court with a calculation of the amount she thought she had stolen. Her figure, which included no prejudgment interest, differed only by approximately ten percent from the figure eventually arrived at.

At the December 1988 probation revocation hearing, the court clarified the basis for the amount of restitution stipulated to:

"THE COURT: In the original sentencing in this case, there was a question over the precise amount of the restitution which was due. When we came to Court, the amount was—the figure was $53,647.58. During the sentencing, there was some question about whether it was 6 to $10,000 less than that. The Court indicated that the prosecution and the defense should find out what the correct figure was and present that to the Court. The only thing I can find in the record that even comes close to that is a restitution plan approved by Mr. Anderson, Mrs. Kahlsdorf and the Court in which it's indicated that the total amount of $48,289.35 was taken. Is that $48,000 the correct figure now, Mr. Anderson?

"MR. ANDERSON: Yes, your Honor. What had happened is that the—there had been moneys returned to Pengo Wireline by Mrs. Kahlsdorf prior to the

sentencing. And I think that figure was somewhere around $3,000, though the exact figure doesn't—escapes me at this point. Pengo Wireline was reimbursed by a company, by a bonding company, for the rest of their loss, which came to about $48,289."

This explanation, coupled with the calculation appellant herself prepared, persuades us that there was a reasonable basis for the amount appellant agreed to and that her waiver should be upheld.

## Willful Failure to Pay Restitution

■ Appellant next argues that her probation was wrongfully revoked because no finding was made that the failure to pay was willful. She claims she did not have the financial resources to pay restitution and that revocation of her probation for failure to pay violated her right to fundamental fairness under the Fourteenth Amendment to the United States Constitution. *See Bearden v. Georgia*, 461 U.S. 660, 672, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221 (1983).

As the State points out, appellant's second probation was revoked for failure to file monthly reports as well as for failure to pay restitution. At her final sentencing hearing, the trial court stated as follows:

"Mrs. Kahlsdorf, the Court finds and concludes that you are in violation of your probation. *Not only have you not given reports to the Department of Probation and Parole as required by that Department, thereby violating your terms of your probation; but in addition to that, you have not given to the Court any report whatsoever. And you are thereby in violation of your probation.* I have not heard but I seriously doubt whether the Prosecuting Attorney received any report and you're probably in violation of your probation for that as well.

"Having said that, I would also tell you, Mrs. Kahlsdorf, that this Court finds and concludes that you have willfully failed to pay restitution and that your probation should be revoked for your willful failure to pay restitution. *Either or*

*both of those grounds are sufficient.* In short, you have not complied with the terms of your probation." (emphasis added)

The record shows that during the period beginning December 1988, appellant filed only one monthly report with her probation officer. Although a copy of this report wound up in the court's file, there is no indication in the record that she filed any other monthly reports with either the court or prosecutor's office. The terms of her probation also required that such reports were to be attached to each payment she remitted. Appellant last corresponded with the probation office with a handwritten note received March 20, 1989, to which a payment but no report was attached.

The trial court stated that failure to file the reports in and of itself was a sufficient reason for revocation. Had appellant made monthly status reports indicating the reasons why she could not pay, the court might not have revoked her probation. Her failure to file monthly reports is evidence of a pattern of disregard of the seriousness of her obligation to the victim of her crimes and to the people of the State of Wyoming. Appellant could certainly afford a postage stamp each month to keep her probation officer advised of her financial situation. She failed to do so, and, as a result, her probation was revoked after extraordinary patience on the part of the trial court. In sum, we find no basis for granting relief from the trial court's revocation of probation.

## Right to Speedy Sentencing

■ In her last claim of error, appellant argues that her right to speedy sentencing under *Yates v. State*, 792 P.2d 187 (Wyo. 1990) was violated when she did not receive a sentence of incarceration until her first probation revocation in December 1988, more than three years after she was found guilty of larceny by bailee. Subsequent to the filing of this appeal, we addressed this identical question in the factually-similar case of *Davila v. State*, 815 P.2d 848, 850 (Wyo.1991):

"Even though Davila's probation subsequently was revoked, and the court imposed a sentence of incarceration, the sentencing of a probationer, after revocation of probation, does not invoke the *Yates* rule."

We explained our holding that no unreasonable delay in sentencing had occurred as follows:

"The imposition of probation, when it starts immediately and contains no provision for additional sentencing upon its completion, does not result in a delay in sentencing even if incarceration time is not specifically addressed. A later imposition of imprisonment is an intrinsic event following a failure to comply with the conditions of probation. The two events, when probation is imposed, are inextricably intertwined, whether the sentencing judge explicitly orders, and then suspends, jail time or not. An incarceration that is imposed to replace an ineffective sentence to probation, in essence, is only a sequential step in the administration of the pre-existing sentence." *Davila,* at 850.

Appellant's right to freedom from delay in sentencing was not violated, and *Yates* does not apply.

## CONCLUSION

The length of appellant's initial sentence to probation is corrected to five years.

Otherwise, the trial court's challenged orders are affirmed.

GOLDEN, Justice, dissenting, with whom MACY, Justice, joins.

I would reverse the decision of the trial court and remand for an order discharging Ms. Kahlsdorf from probation. The trial court's initial order of restitution was illegal and beyond its authority when imposing probation under W.S. 7–13–203 ("old 203"). The court's subsequent orders were tainted by this original error. Ms. Kahlsdorf has already served the five-year maximum probationary period under "old 203." Accordingly, she should be discharged from probation.

Appellant did not brief the issue of whether restitution could be ordered pursuant to the "old 203" probation. However, this court should exercise its general supervisory power to correct an error which, though not briefed by appellant, would result in "an unmistakable and unconscionable miscarriage of justice." *Sanchez v. State,* 592 P.2d 1130, 1131 (Wyo.1979); W.R.Cr.P. 49(b).

### *"Old 203" or "Old 301"*

After Ms. Kahlsdorf pled guilty, the trial court had two probation options under Wyoming Statutes. It could either defer the entry of a judgment of conviction under W.S. 7–13–203 (1977) ("old 203")[1] or it

---

**1.** W.S. 7–13–203 (1977), states in pertinent part as follows:

If any person is found guilty of or pleads guilty to any felony except murder, sexual assault in the first or second degree or arson of a dwelling house or other human habitation in the actual occupancy of a human being, the court shall ascertain whether the offense of which the accused is guilty is his first offense * * *. If the court is satisfied that he was a person of good reputation before the commission of the offense charged and had never before been convicted of any felony, and that if permitted to go at large would not again violate the law, the court may in its discretion * * * delay passing sentence and then parole the person * * *. The court, if satisfied at the time of appearance, that the person has demeaned himself in a law-abiding manner and lived a worthy, respectable life, *may by an order of record, continue parole for the period of five (5) years,*

*at the expiration of which the court shall enter an order finally discharging the person * * *.* At any time before the final discharge of the person that the court believes that the paroled person has attempted to leave the state or failed to comply with the terms of his parole the court shall cause a warrant to issue for the apprehension and arrest of the person and require him to be brought before the court. The court shall inquire into his conduct since his parole, and if satisfied from the inquiry that the person has violated the terms of his parole and recognizance, the court may impose sentence upon the verdict or plea against him in the manner and to the same extent as though the passing of sentence had not been delayed and the person had not been paroled or permitted to go at large. (emphasis added).

The reference to "parole" in this statute actually means probation. *See Sorenson v. State,* 604 P.2d 1031, 1038 n. 6 (Wyo.1979).

could enter a judgment of conviction and suspend the imposition or execution of sentence under W.S. 7–13–301 (1977) ("old 301").[2] The court's order stated as follows:

> The judgment and sentence of the Court should be delayed pursuant to Sections 7–13–301 and 7–13–203, W.S.1977.
>
> \* \* \* \* \* \*
>
> [T]he imposition of this sentence is suspended and delayed pursuant to Sections 7–13–301 and 7–13–203, W.S.1977, based on the conditions hereinafter set forth.

Because the trial court's order is ambiguous, this court is faced with the initial question of whether the trial court granted probation under "old 203" or "old 301." The trial court may grant probation under "old 203" only in the absence of entry of a judgment of conviction.

In this case, no judgment of conviction was made in the trial court's order. Instead, the order stated that the judgment and sentence of the court would be delayed. Additionally, the court incorporated language from "old 203" elsewhere in its order.[3] I conclude that the trial court granted probation under "old 203." *Cf. King v. State*, 720 P.2d 465, 469 (Wyo.1986) (ambiguity resolved in favor of "203" based on court's intent.)

### Restitution Under "Old 203"

The next question is whether the trial court could order restitution after placing appellant on probation under "old 203." This court has stated that under "old 203"

(and in its subsequent incarnation as "new 301"), deferral-probation takes place in the prosecutorial phase, not in the adjudicatory-sentence phase, of a criminal prosecution. *Billis v. State*, 800 P.2d 401, 412 (Wyo.1990). In other words, under "old 203," the court does not enter a judgment against the defendant, but lets him or her go free, under probation. No judgment is made which can form the basis for sentencing.

Probation without judgment is inconsistent with the restitution statutes in place when the court's order was entered against appellant. W.S. 6–10–110 (Cum.Supp.1984), amended and renumbered as W.S. 7–9–102 (June 1987 Repl.), provided the authority for the court to order restitution:

> In addition *to any other punishment* prescribed by law, and except as otherwise provided by W.S. 6–3–702(c), the court may, *upon conviction* for any misdemeanor or felony, order a defendant to pay restitution to each victim as prescribed under W.S. 7–13–109. (emphasis added).

W.S. 7–13–109 (Cum.Supp.1984), amended and renumbered as W.S. 7–9–103(a) (June 1987 Repl.), provided the procedural mechanism:

> *At the time of sentencing* a defendant for any misdemeanor or felony conviction, if the court desires to require restitution, the court shall fix a reasonable amount as restitution owed to each victim for pecuniary damages resulting

---

The current version of this statute, which differs in some respects from "old 203," is found at W.S. 7–13–301 (June 1987 Repl.). For a detailed discussion of how "old 203" became the current 7–13–301, and how "old 301" became the current 7–13–302, *see Billis v. State*, 800 P.2d 401, 410–12 (Wyo.1990).

2. W.S. 7–13–301 (1977), whose current version is found at W.S. 7–13–302 (June 1987 Repl.), reads as follows:

> After conviction or plea of guilty for any offense, except crimes punishable by death or life imprisonment, the court may suspend the imposition of sentence, or may suspend the execution of all or a part of a sentence and may also place the defendant on probation or may impose a fine applicable to the offense and also place the defendant on probation.

With the consent of a defendant charged with a crime, except a crime punishable by death or life imprisonment, the court may suspend trial and place such defendant on probation.

3. [I]f at any time during the period of the Defendant's probation and before the final discharge of the Defendant, the Court believes that she has failed to comply with the terms of her probation, the Court shall cause a warrant to be issued for the apprehension and arrest of the Defendant, Ann Kahlsdorf, requiring her to again be brought before the Court, where the court shall impose a sentence upon the plea of Guilty in this matter in the manner and to the same extent as if the passing of sentence on Defendant had not been delayed and Defendant had not been paroled and permitted to go at large.

from the defendant's criminal activity, and shall include its determination as a special finding *in the judgment of conviction.* (emphasis added)

Under these two statutes, as I read them, restitution may not be ordered unless judgment of conviction is entered. Searching further in the statutes, I locate W.S. 7-13-308 (Cum.Supp.1984), which states:

> If the sentencing court orders *suspended imposition of sentence, suspended sentence or probation,* the court shall consider as a condition that the defendant in cooperation with the probation and parole officer assigned to the defendant promptly prepare a plan of restitution including the name and address of each victim, the amount of restitution determined to be owed to each victim *pursuant to W.S. 7-13-109* and a schedule of restitution payments. (emphasis added)

The word "probation" in this statute could be read to include "old 203" probation before judgment. However, the statute includes reference to W.S. 7-13-109, which allows restitution only where there is conviction. Additionally, the court ordering restitution is referred to as the "sentencing court."

Finally, I turn to W.S. 6-3-704(b) (June 1983 Repl.), which allows the court to order restitution for bad checks in case of "deferred prosecution or probation." The legislature's specific reference to "deferred prosecution" here suggests that it intentionally excluded deferred prosecution elsewhere by failure to make reference to it in the other restitution statutes.

Taken as a whole, the statutory scheme for restitution convinces me that the legislature made no provision for payment of restitution in the absence of a judgment of conviction. Furthermore, under our precedents, Wyoming courts have no inherent authority to order restitution in the absence of statute. *See Bishop v. State,* 687 P.2d 242, 247-48 (Wyo.1984); *Barnes v. State,* 670 P.2d 302, 303-04 (Wyo.1983); *Phillips v. State,* 553 P.2d 1037, 1041-42 (Wyo.1976).

For the above reasons, I conclude that the trial court's order of restitution under W.S. 7-13-203 (1977), was illegal and should be reversed. Since the subsequent revocations depended on this illegal order, they should also be reversed. Ms. Kahlsdorf served the five-year maximum probationary period available under "old 203." At the close of that period, on April 18, 1990, an order should have been entered discharging her from probation.