R. Craig CHRISTENSEN, Appellant
(Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 92–174.

Supreme Court of Wyoming.

June 9, 1993.

Rehearing Denied July 20, 1993.

Richard H. Honaker of Honaker, Hampton & Newman, Rock Springs, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

R. Craig Christensen appeals the district court's order nunc pro tunc, correcting his initial sentence, reinstating his probation and setting the amount of restitution owed at $130,000. Limited to the explanations set forth in this opinion, we affirm.

## ISSUES

Appellant presents the following issues:

1. Did the trial court, upon a probation revocation hearing, have authority to amend nunc pro tunc the court's original Order Suspending Proceedings which had been entered more than five years earlier?

2. Was the trial court's original Order Suspending Proceedings a deferred sentence or parole before sentence, under Section § 7–13–203, W.S.1977?

3. Are the restitution provisions contained in the Order Suspending Proceedings and in the Order Amending Judgment Nunc Pro Tunc illegal and unenforceable?

Appellee frames the issues in this way:

I. Does the trial court have the authority to correct an ambiguous sentence by a nunc pro tunc order?

II. Was Christensen properly sentenced under W.S. 7–13–301 (1977)?

III. Did the trial court appropriately order Christensen to pay restitution?

## FACTS

R. Craig Christensen (appellant) was director of Lo–Call, U.S.A., Inc., a Wyoming corporation, engaged in Watts line rental and telephone retail sales. The corporation was not registered as a security broker in the state and it had not registered its securities. Approximately $200,000 had been invested by ten Wyoming investors in Lo–Call's operations. On January 2, 1985, a cease and desist order was filed against appellant and Lo–Call relating to offering interests in a partnership known as Western Wyoming Tele–Communications Project Limited Partnership. On September 16, 1985, Christensen was charged and pled not guilty to twenty-five violations of security laws under Wyo.Stat. § 17–4–101(a) and 17–4–107(a) (1977).

At a hearing on January 27, 1987, appellant, under a plea agreement, pled no contest[1] to four counts, and the remaining counts were dismissed. After determining a factual basis to accept the plea, the district court stated:

It's the Order of this Court that you be placed on supervised probation—that you serve a term in the Wyoming State Penitentiary of not less than three years on each count to be served consecutively; that you be placed on supervised probation for a period of twelve years upon the following terms and conditions * * *.

Appellant's probation was conditioned upon paying a $5,000 fine, a surcharge of twenty-five dollars for each count to the Victim's Compensation Fund, and restitution to the "victims" of "between $157,000 and $130,000, depending upon what figure Counsel and the State come to." Earlier in the proceedings, appellant's counsel had noted his understanding of the restitution amount to be determined by stating, "it's also my understanding that the full amount of restitution will be determined based upon * * * the amount actually paid by the people named in the Complaint for purchase of the investment that forms the subject matter of this litigation."

The state reminded the court that "we have not received, as yet, the consent of the Defendant to being placed on probation pursuant to § 7–13–301." Appellant's counsel sought to clarify the status of the proceedings at that point by noting that

---

1. This court has held that a "nolo contendere plea has the same effect in a criminal case as a guilty plea." *Zanetti v. State,* 783 P.2d 134, 139 (Wyo.1989) (citing *State v. Steele,* 620 P.2d 1026 (Wyo.1980)).

following the court's finding of a factual basis for the plea, under "301" the court is then required to request the consent of the defendant to suspend the proceedings. The following exchange occurred:

[Appellant's counsel]: Excuse me, Your Honor. Before we do that, it was my understanding that under § 7–301 what we would do would be to suspend proceedings after the Court found the factual basis for the no contest plea. The consent that is required under the statute is the consent to the Defendant to the suspension of those proceedings at that time.

Court: Yes. Do you consent to the suspension of those proceedings during that period?

Mr. Christensen: Yes, I do.

Appellant's counsel then sought to clarify the consequences of proceeding in this manner by initiating the following exchange:

[Appellant's counsel]: Your Honor, just for purposes of the record, so that it's clear, right now the way the thing stands, if the Court accepts it based upon that consent, as far as this situation is concerned everything has been suspended effective after the Court's finding that there's a factual basis for the plea. If Mr. Christensen does not meet the terms of the probation, then at that point in time, the Court will factually accept the plea and impose the sentence to the State Penitentiary that was called; is that correct?

Court: That's right. As a matter of fact, we'll not only do that, we'll revoke the probation and sentence him—send him to the penitentiary.

On January 28, 1987, the district court judge then entered an "Order Suspending Proceedings Pursuant to Wyoming Statutes Section 7–13–301, 1977" and placed appellant on probation, three years for each count to be served consecutively, or twelve years total plus a fine of $5,000, and a $100 surcharge to the Victim's Compensation Fund. The district court also entered a restitution order for *"either* $157,-000 or $130,000" as stipulated to by coun-

sel. (Emphasis added). Appellant was ordered to pay restitution of $1,000 per month for eleven years and nine months with the remaining balance due at the end of that time. If appellant pre-paid the restitution and surcharge, probation would be reduced to one year. The order stated that if appellant "successfully completes his probation, the charge herein shall be dismissed pursuant to Wyoming Statutes Section 7–13–301, 1977."

On May 19, 1989, a petition was filed to rescind the order suspending proceedings and to conduct sentencing proceedings against appellant, alleging that he had failed to make payments for the months of March, April and May, 1989. The record reflects no action that was ever taken on that petition. On April 16, and again on May 26, 1992, the state filed a petition to revoke appellant's probation claiming that the last restitution payment was made on October 2, 1991, and that a balance of $105,153.95 remained. Appellant filed a motion on June 19, 1992, to dismiss the petition for revocation and to discharge him from probation. Appellant claimed that the district court's initial proceedings had applied WYO.STAT. § 7–13–203, which limited the court's jurisdiction to revoke probation to five years, since passed. Appellant claimed the court had "no statutory authority to require restitution unless a sentence was imposed and suspended under W.S. 7–13–301 * * * in [the] Order."

On July 17, 1992, the district court, with a different judge presiding, entered an order, *nunc pro tunc*, amending appellant's judgment which "by reason of ambiguity does not correctly state the judgment of the Court." The order stated that the

trial be, and is hereby, suspended pursuant to Wyoming Statutes § 7–13–301, 1977, paragraph two, and that the Defendant herein, R. CRAIG CHRISTENSEN, be placed on supervised probation on each of the four counts for a term of three (3) years for each count, to run consecutively for a total of twelve (12) years. While on probation, the Defendant must adhere to the following terms and conditions:

1. That Defendant will pay restitution in the amount of $130,000.00 in monthly installments of $1,000.00 for a period of eleven (11) years and nine (9) months * * *.

2. That Defendant pay a fine of $5,000.00 and a $100.00 surcharge to the Wyoming Crime Victims' Compensation Fund * * *.

\*       \*       \*       \*       \*       \*

Defendant receive credit for time served successfully on probation to and including the date of this order * * *.

The district court also denied appellant's motion to dismiss the petition for probation revocation and his motion for discharge from probation. Appellant appeals the district court orders.

## DISCUSSION

The standard we employ in reviewing decisions of the district court is well known and often repeated. We have said:

"[W]e will not interfere with the decision of the district court unless there is a procedural error or unless there is shown to be a clear abuse of discretion." In our determination whether appellant has clearly shown that the district court abused its discretion, we have said countless times "the ultimate issue is whether or not the court could reasonably conclude as it did."

*Love v. Love*, 851 P.2d 1283, 1286 (Wyo. 1993) (quoting *Gaines v. Doby*, 794 P.2d 566, 570 (Wyo.1990)) (citations omitted). It is clear that:

A reviewing court cannot substitute its judgment for that of the trial court, whose judgment must be sustained unless clearly erroneous, manifestly wrong, or totally against the evidence. The appellate court will not set aside the trial court's findings merely because it might have reached a different result.

*Love*, at 1286 (quoting *Roberts v. Vilos*, 776 P.2d 216, 217 (Wyo.1989)).

**2.** § 7–13–301. Suspension of imposition or execution of sentence; placing defendant on proba-

Concerning the trial court's review of probation matters, we have specifically said:

The decision to revoke probation lies within the sound discretion of the trial court. We will not disturb the court's decision absent a clear showing of abuse of that discretion.

*Kahlsdorf v. State*, 823 P.2d 1184, 1187–88 (Wyo.1991) (citing *Lower v. State*, 786 P.2d 346, 351 (Wyo.1990) and *Chapman v. State*, 728 P.2d 631, 634 (Wyo.1986)).

1. *Oral pronouncement v. written order*

■ We begin by noting that a conflict exists between the district court's 1987 oral pronouncement and the written order suspending proceedings. Both parties argue, and we agree, that the written order does not accurately reflect the pronouncement made at appellant's hearing. In this instance, we accept the reasoning of the Tenth Circuit and acknowledge that "an orally pronounced sentence controls over a judgment and commitment order when the two conflict." *United States v. Villano*, 816 F.2d 1448, 1450 (10th Cir.1987). *See also, United States v. Chasmer*, 952 F.2d 50, 52 (3d Cir.1991); *United States v. Makres*, 851 F.2d 1016, 1017 (7th Cir.1988).

■ We look next to whether the oral pronouncement of sentence was unambiguous. A "written judgment and sentence order may be used to 'clarify an ambiguous oral sentence by providing evidence of what was said from the bench.'" *United States v. Earley*, 816 F.2d 1428, 1431 (10th Cir.1987) (quoting *Villano*, 816 F.2d at 1451). However, "[i]n the event a variance exists between an unambiguous pronouncement of sentence and the written judgment and commitment, the oral pronouncement must control." *United States v. Pugliese*, 860 F.2d 25, 30 (2d Cir.1988), *cert. denied*, 489 U.S. 1067, 109 S.Ct. 1344, 103 L.Ed.2d 813 (citing *United States v. Marquez*, 506 F.2d 620, 622 (2d Cir.1974)).

In January, 1987, two statutory provisions relating to probation occupied the field. *Billis v. State*, 800 P.2d 401, 409 (Wyo.1990). They were "old 301 2" and

tion; fine and probation; suspension of trial and placing defendant on probation.

"old 203 [3]." Under "old 203" the legislature provided probation to first-time felons who had not committed murder, sexual assault, or arson. Under this probationary scheme, the defendant would plead guilty to or be found guilty of the charged felony, and the trial court would delay passing sentence and place him on probation. The minimum probationary period was one year, the maximum five years. The defendant's consent to this treatment, *i.e.*, delay passing sentence and placement on probation, was not a requirement. A set of specific probationary terms was stated. If the defendant successfully served his probation, the court would enter an order finally discharging him and annulling the verdict or guilty plea. The effect of the annulment would be as though the defendant had never committed the crime. The crime would not be on his record.

The second statutory probationary scheme, "old 301," applied to any criminal defendant, not just first-time felons as did "old 203." "Old 301" pertained to any crime, whether misdemeanor or felony, except a crime punishable by death or life sentence. Under "old 301", the legislature authorized the court to use any one of four methods of probation. Three probationary methods followed a guilty plea or conviction. Under the first of these three methods, the court suspended the imposition of sentence and placed him on probation. In *King v. State*, 720 P.2d 465, 468–69 (Wyo. 1986), we likened "old 301's" language of "suspension of imposition of sentence" to "old 203's" language of "delay passing sentence." Under a second method, the court could suspend the execution of all or a part of a sentence and place the defendant on probation. In *Sorenson v. State*, 604 P.2d 1031, 1037 (Wyo.1979), we held that the legislature's 1971 act creating the parole board repealed by implication the court's authority to order a defendant to serve

> After conviction or plea of guilty for any offense, except crimes punishable by death or life imprisonment, the court may suspend the imposition of sentence, or may suspend the execution of all or a part of a sentence and may also place the defendant on probation or may impose a fine applicable to the offense and also place the defendant on probation. With the consent of the defendant charged with a crime, except a crime punishable by death or life imprisonment, the court may suspend trial and place such defendant on probation.

3. § 7–13–203. Parole before sentence; generally; terms and conditions; discharge; revocation of parole and imposition of sentence.

> If any person is found guilty of or pleads guilty to any felony except murder, sexual assault in the first or second degree or arson of a dwelling house or other human habitation in the actual occupancy of a human being, the court shall ascertain whether the *offense of which the accused is guilty is his* first offense, the extent of moral turpitude involved in the act committed, and other facts and circumstances relating to the accused as he may desire to know. If the court is satisfied that he was a person of good reputation before the commission of the offense charged and had *never before been convicted of any* felony, and that if permitted to go at large would not again violate the law, the court may in its discretion, by an order entered of record, delay passing sentence and then parole the person and permit him to go at large

> upon his own recognizance, conditioned that he will personally appear and report to the court twice in each year at times and places fixed in the order and that he will demean himself while at large in a law-abiding manner and live a worthy, respectable life, and that he will not leave the state without the consent of the court. The court, if satisfied at the time of appearance, that the person has demeaned himself in a law-abiding manner and lived a worthy, respectable life, may by an order of record, continue parole for the period of five (5) years, at the expiration of which the court shall enter an order finally discharging the person, and no further proceedings shall be had upon such verdict or plea. At any time after the expiration of one (1) year from the date of the original parole the court shall have the power in its discretion to terminate parole and finally discharge the person and annul the verdict or plea of guilty. At any time before the final discharge of the person that the court believes that the paroled person has attempted to leave the state or failed to comply with the terms of his parole the court shall cause a warrant to issue for the apprehension and arrest of the person and require him to be brought before the court. The court shall inquire into his conduct since his parole, and if satisfied from the inquiry that the person has violated the terms of his parole and *recognizance, the court may* impose sentence upon the verdict or plea against him in the manner and to the same extent as though the passing of sentence had not been delayed and the person had not been paroled or permitted to go at large.

part of a sentence, then suspend execution and place him on probation as to the balance. Under the third probationary method, the court could impose a fine applicable to the offense and place the defendant on probation. Finally, with the consent of the defendant who had been charged but who had neither pleaded guilty nor been convicted, the court could suspend trial and place him on probation. If the defendant successfully served probation under any of these four methods, the court, under then WYO.STAT. § 7–13–304 ("old 304"), discharged the defendant, with no mention being made of annulling the verdict or guilty plea. Thus, the verdict or guilty plea remained on the defendant's record.

Having in mind the descriptive features of each of these two probationary schemes, we must resolve which one of them the district court used in appellant's case. The state says "old 301" was used, while appellant says it was "old 203." We have combed the district court's oral pronouncement in the context of the dialogue between the court and counsel in order to resolve the dispute. As a result, we have identified these features of the oral pronouncement:

1. Specific reference is made to "301" but not "203";

2. Specific reference is made to serving a prison term on each of the four counts of not less than three years consecutively, which is a total of twelve years;

3. Specific reference is made to placement on supervised probation for twelve years;

4. A $5,000 fine was imposed and not suspended;

5. A $25 surcharge, as to each of the four counts, to the Victim's Compensation Fund was imposed and not suspended;

6. Restitution was ordered and not suspended;

7. Specific reference is made that if appellant violates the terms of his proba-

tion, the court will revoke probation and send him to prison to serve the sentence called, i.e., three years on each of four counts consecutively, for a total of twelve years;

8. Specific reference is made that appellant's consent is required; that the court make a finding of a factual basis for the no contest plea; that upon such finding of a factual basis for the plea, the court suspend further proceeding. If appellant violated his probation, then the court shall accept the no contest plea and impose the sentence previously called.

Features 1–7 match the features of "old 301." More specifically, features 1–7 match that probationary method under "old 301" which provides for suspension of the execution of all of a sentence. Since the court imposed a sentence of three years on each of the four counts to be served consecutively, for a total of twelve years, and then suspended the service of that sentence pending probation, it cannot be plausibly maintained that the court "delayed passing sentence." A definite sentence was passed, only its execution was suspended.

Despite the match between features 1–7 and "old 301," appellant contends that the addition of feature No. 8 causes the disposition to resemble "old 203" more than "old 301." We disagree. The distinctive features of "old 203" do not include a requirement of defendant's consent, a suspension of the plea-taking part of the proceedings, or the execution of the sentence previously called if the defendant violated his probation. Moreover, the chief feature of "old 203," namely, the maximum of five years for the probationary period, is noticeably absent from the oral pronouncement. Instead, a twelve-year probationary period is expressly stated.

Although the oral pronouncement is not a model of clarity, and the obtaining of appellant's consent was unnecessary since the court was not suspending trial,[4] we are satisfied that the court and appellant knew

4. As we noted in *Billis*, 800 P.2d at 409–10, the defendant's consent feature of the second part of "old 301" was designed to avoid the later assertion of a speedy trial violation by a defen-

dant whose probation was terminated for misconduct and who then faced resumption of the criminal trial proceedings against him.

they were proceeding under the first part of "old 301" and, in that regard, appellant was agreeing to the suspension of execution of his twelve-year sentence and his placement on probation for a twelve-year period.

We find no ambiguity in the pronouncement of the district court. It is clear from the record, as it was to the parties present, that appellant was being sentenced according to "old 301." We hold that the district court was clearly following the edict of "old 301" in its action. *King*, 720 P.2d at 469. We find no "fatal ambiguity" in the oral pronouncement of sentence in this case that would require us to turn to the written judgment and sentence for clarification. *Earley*, 816 F.2d at 1431. Having found no ambiguity in the district court's order, we need not consider the written judgment and sentence as evidence of what the court intended. *Villano*, 816 F.2d at 1451.

### 2. *Restitution*

Appellant argues that the initial restitution order and the restitution provision in the 1992 order, *nunc pro tunc*, are both illegal under either of two theories. The first theory is based on appellant's contention that the 1987 proceedings were conducted under "old 203," and since appellant has completed five years of probation, he can no longer be required to pay restitution. We reject this argument outright because of our determination that the proceedings in appellant's case were conducted under "old 301."

Appellant's second argument relies on that portion of the statute in effect at the time of the 1987 proceedings against him:

At the time of sentencing a defendant for any misdemeanor or felony conviction, if the court desires to require restitution, the court shall fix a reasonable amount as restitution owed to each victim for pecuniary damages resulting from the defendant's criminal activity, and shall include its determination as a special finding in the judgment of conviction.

WYO.STAT. § 7–13–109(b) (Supp.1984) (emphasis added).

Appellant claims that if "old 301" applies, he was not sentenced under the first part of "old 301," but had proceedings suspended under the second part. Since § 109(a) does not allow restitution to be imposed without first imposing sentence, appellant argues restitution was improper. Because we have determined that the district court sentenced appellant and then suspended execution of the sentence under the first part of "old 301," it is clear that the requirements of § 109(a) have been met.

Appellant also argues that the district court did not make a specific finding, supported by credible evidence, of the amount of restitution owed as required under WYO. STAT. § 7–13–109(b). *Renfro v. State*, 785 P.2d 491 (Wyo.1990). *See also, Keller v. State*, 723 P.2d 1244 (Wyo.1986).

We have found it to be illegal to require a defendant at a sentencing hearing to pay restitution "in an amount to be determined." *Keller v. State*, 771 P.2d 379, 387 (Wyo.1989). Here, the parties could not agree at the time of the hearing on the specific amount, but unlike *Keller*, the district court fixed the parameters at "between $157,000 and $130,000," with the amount to be determined within thirty days. Whether this is sufficient specification is of little consequence, for, as in *Kahlsdorf*, we find that appellant "waived the statutory requirement by agreeing to a plan of restitution containing a specific figure owed and monthly payments and by making some payments under the plan." *Kahlsdorf*, 823 P.2d at 1191–92. At the oral hearing, appellant consented to suspension of proceedings "[u]pon the terms and conditions" imposed by the court, including the parameters given for the determination of the restitution amount and appellant came prepared to make the first $1,000 payment at that time. We have held that "[t]he defendant must challenge the amount of restitution determined at sentencing * * * or the amount is fixed as res judicata, not subject to attack at a probation revocation hearing." *Badura v. State*, 832 P.2d 1390, 1393 (Wyo.1992) (citing

*Sanderson v. State,* 649 P.2d 677, 679 (Wyo.1982)).

According to testimony at the 1992 probation revocation hearing, on March 10, 1987, the state and appellant's counsel signed an agreement stipulating the total amount of restitution to be paid at $135,-000. Appellant then made regular installments under this agreement of $1,000 per month, totaling $44,000 in payments and "did not challenge the amount specified until the final revocation hearing five years later, although [he] had opportunities to do so." *Kahlsdorf,* 823 P.2d at 1194. We take this as direct evidence of appellant's agreement to the parties' stipulation.

■ Although appellant validly waived the "right to a specific finding in the court's order concerning the amount of restitution to be paid," we will still require a "factual showing in the record that the amount consented to was reasonable." *Kahlsdorf,* 823 P.2d at 1194. We find evidence of this reasonableness in the statements of appellant's counsel at the 1987 hearing, reflecting his understanding that "the full amount of restitution will be determined based upon the * * * amount actually paid by the people named in the Complaint for purchase of the investment that forms the subject matter of this litigation."

We hold that the original restitution order was not illegal, that appellant waived his right to an actual determination of the amount of restitution at the time of pronouncement and statements by counsel determined the reasonableness of the calculation.

3. *Nunc pro tunc order*

■ We turn now to the second action by the district court in clarifying, *nunc pro tunc,* the previous written order. A *nunc pro tunc* order "serves to rectify omissions from the record so as to make it speak the truth." *Martinez v. City of Cheyenne,* 791 P.2d 949, 956 (Wyo.1990) (citing *Caillier v. City of Newcastle,* 423 P.2d 653 (Wyo.1967) and *Barrett v. Whitmore,* 31 Wyo. 301, 226 P. 452 (1924)).

We have said that the "district court could properly correct a judgment and sentence by an order nunc pro tunc to accurately reflect what had been unambiguously pronounced at the sentencing hearing." *McGraw v. State,* 770 P.2d 234, 235 (Wyo. 1989). However, we note the following caveat in its usage:

[T]he nunc pro tunc is limited to cases where it is necessary to make the judgment speak the truth, and cannot be used to change the judgment.

*Eddy v. First Wyoming Bank, N.A.–Lander,* 713 P.2d 228, 234 (Wyo.1986) (quoting *Arnold v. State,* 76 Wyo. 445, 306 P.2d 368, 374 (1957)). *See also, Wyoming Nat. Bank of Gillette v. Davis,* 770 P.2d 215, 217 (Wyo.1989).

The district court issued an order, *nunc pro tunc,* suspending trial under the second part of 301, reinstating probation and reducing the amount of restitution to $130,-000. This is not consistent with the unambiguous oral pronouncement rendered by the district court in 1987, which expressly sentenced appellant and suspended execution of sentence under the first part of "old 301." "The 'now for then' entry is not proper or even permissible to correct judicial errors, judicial omissions or to change the judgment from that judgment which was actually rendered." *Arnold,* 306 P.2d at 374. As in *Davis,* the district court's actions "transgressed this rule of law." *Davis,* 770 P.2d at 217.

The parties agreed that the amount of restitution to be paid would be $135,000, and appellant made payments honoring this stipulation for five years. The *nunc pro tunc* order, by reducing the amount of restitution owed, changed the judgment in this case. We hold, as we did in *Eddy,* that the court, "under the guise of clarification, altered the judgment when it failed to enter a judgment based upon the stipulation of the parties." *Eddy,* 713 P.2d at 234.

The *nunc pro tunc* order of the district court did not clarify the original judgment and must be considered a nullity.

## DISPOSITION

The district court's initial proceedings in 1987 were conducted under the first part of "old 301." The restitution order was proper, and appellant waived his right to a specific determination of the restitution amount at the time of sentencing. The district court's 1992 order, *nunc pro tunc*, altered the original judgment and is therefore disregarded to the extent it purported to do so.